[Cite as *State ex rel. Young v. Butler Cty. Personnel Office*, 2014-Ohio-5331.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Wanda Young,                      :

        Relator,                                :

v.                                              :                    No.  14AP-3

Butler County Personnel Office and              :                (REGULAR CALENDAR)
Industrial Commission of Ohio,
                                                :
        Respondents.                            :

                                                :

---

D E C I S I O N

Rendered on December 2, 2014

---

*Barron Peck Bennie & Schlemmer, LPA,* and *Mark L. Newman*, for relator.

*Board Counsel, Butler County Commissioners,* and *Gary L. Sheets,* for respondent Butler County Personnel Office.

*Michael DeWine*, Attorney General, *Lisa R. Miller*, and *Cheryl J. Nester*, for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

BROWN, J.

{¶ 1}  Relator, Wanda Young, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order denying her permanent total disability compensation, and to enter an order granting such compensation.

{¶ 2}  This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals.  The magistrate issued the

appended  decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus.  No objections have been filed to that decision.

{¶ 3}   Based upon an independent review of the record, and finding no errors of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  In accordance with the magistrate's recommendation, relator's request for a writ of mandamus is denied.

*Writ of mandamus denied.*

TYACK and LUPER SCHUSTER, JJ., concur.

_____

[Cite as *State ex rel. Young v. Butler Cty. Personnel Office*, 2014-Ohio-5331.]

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Wanda Young,  :

      Relator,  :

v.  :  No. 14AP-3

Butler County Personnel Office and  :  (REGULAR CALENDAR)
Industrial Commission of Ohio,
        :
      Respondents.
        :

---

M A G I S T R A T E ' S   D E C I S I O N

**Rendered on September 4, 2014**

---

*Barron Peck Bennie & Schlemmer, LPA,* and *Mark L. Newman*, for relator.

*Board Counsel, Butler County Commissioners,* and *Gary L. Sheets,* for respondent Butler County Personnel Office.

*Michael DeWine*, Attorney General, *Lisa R. Miller* and *Cheryl J. Nester*, for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

**{¶ 4}** In this original action, relator, Wanda Young, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting the compensation.

Findings of Fact:

{¶ 5}   1. Relator has four industrial claims arising out of her employment as a nursing assistant at the Butler County Care Facility.  The commission lists the employer as the Butler County Personnel Office

{¶ 6}   2. On June 24, 2005, relator sustained an industrial injury (claim No. 05-369290), which is allowed for:

> Sprain left elbow; left lateral epicondylitis; tendinopathy of the brachial tendon left elbow; partial tear of brachial tendon left.

{¶ 7}   3. On October 29, 2006, relator sustained an industrial injury (claim No. 06-394743), which is allowed for:

> Right shoulder sprain; impingement syndrome right shoulder; rotator cuff tear right shoulder; synovitis right shoulder.

{¶ 8}   4. On May 2, 2007, relator sustained an industrial injury (claim No. 07-825779), which is allowed for:

> Sprain lumbosacral; substantial aggravation L4-5 and L5-S1 spondylosis; bilateral posterior superior iliac spine tendonitis.

{¶ 9}   5. On August 26, 2008, relator sustained an industrial injury (claim No. 08-852242), which is allowed for:

> Sprain of neck; sprain of right knee and leg; substantial aggravation pre-existing right knee chondromalacia; major depressive disorder.

{¶ 10} 6. Relator also has an industrial injury (claim No. 00-515296) arising out of her employment as a waitress/cook at "The Donut Shack."  This injury occurred September 12, 2000 and is allowed for:  "Second degree burn left foot.

{¶ 11} 7. The record contains a five-page document dated January 18, 2012 captioned "Ohio Valley Goodwill Industries Work Adjustment Services Discharge Summary."  The Goodwill summary indicates that, during November and December 2011, relator participated in a four-week transition program designed to assist her to find new employment

{¶ 12} The Goodwill summary assesses relator's "strengths" and "barriers" to employment:

**STRENGTHS:**

- Provided documentation necessary to complete the Employment Eligibility Verification (I-9) form required of all newly hired employees
- Has valid driver's license and own[s] vehicle
- Exhibited awareness of employers' expectations regarding "soft" skills
- Capable of following verbal instructions and demonstrations
- Capable of learning new procedures/work tasks
- Demonstrated ability to focus on work tasks
- Courteous, polite
- Exhibited sufficient stamina for a four-hour workday on sedentary jobs

**BARRIERS TO EMPLOYMENT:**

- No recent work history
- Lacks high school education/GED
- Physical limitations including no lifting over 20 lbs and only occasional lifting of 20 lbs or less; no squatting/kneeling; bending, twisting, reaching below knee, pushing/pulling, standing/walking limited to occasionally; sitting and lifting above the shoulders limited to frequently

The Goodwill summary concludes:

**DESIRED OUTCOMES AND EXPECTATIONS ESTABLISHED/ACHIEVED:**

Wanda was referred for Work Adjustment services to assess her ability to transition to different types of work while assessing her work behaviors, assets and deficits for employment.

Wanda demonstrated the ability to easily transition to different types of work and exhibited the work behaviors expected of a competitive employee. She was attentive when directions were provided, retained instructions and was capable of working independently. Wanda's physical restrictions and limited stamina for more than a four-hour day in a

sedentary position would appear to be insurmountable barriers to obtaining employment in a retail position, as she desired.

Without a GED, Wanda's other vocational interest, working with computers, would be unlikely. At this time, her academic skills, concentration and attention to detail would indicate that she would struggle with obtaining her GED and computer training.

**REASONS FOR DISCHARGE:**

Wanda completed her four-week adjustment program.

{¶ 13} 8. The record contains a one-page document captioned "Vocational Rehabilitation Closure Report," which is a form (RH-21) of the Ohio Bureau of Workers' Compensation ("bureau"). The document was approved by a vocational rehabilitation case manager on May 30, 2012. The document states:

Ms. Young's case was assigned to this case manager on 10/20/11. Barriers identified for Ms. Young included, sedentary work restrictions and no GED. A four week work adjustment program was recommended and Ms. Young demonstrated that she could tolerate a different work environment. Based on this JSST and job search services were recommended. Ms. Young also had a GED assessment and studied for the test on her own. Her academic levels were so low that it was impossible to assess how long it would take her to be able to reach a level when she could take the GED so this was not a focus of her plan services. Ms. Young completed JSST and 20 weeks of job search services. Ms. Young's effort was excellent, she was extremely limited in her work opportunities due to her education and restrictions. Case closure was recommended for completion of services without finding employment.

{¶ 14} 9. On January 3, 2013, relator filed an application for PTD compensation on a form provided by the commission.

{¶ 15} 10. The PTD application form asks the applicant for information regarding her education. On the form, relator indicated that the eighth grade was the highest grade of school completed and this occurred in 1969. The form asks the

applicant whether she has received "a certificate for passing the General Educational Development test (GED)."  In response, relator marked the "no" box

{¶ 16} The form also asks the applicant:  "Have you gone to trade or vocational school or had any type of special training?"  In response, relator marked the "no" box.

{¶ 17} The form also posed three questions to the applicant:  (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?"  Given the choice of "yes," "no" and "not well," relator selected the "not well" response to all three queries.

{¶ 18} 11.  On March 26, 2013, at the commission's request, relator was examined by clinical psychologist Norman L. Berg, Ph.D.  In his eight-page narrative report, Dr. Berg opined:

### DIAGNOSIS:

Axis I.        Major Depressive Disorder          296.20

Axis II.       No diagnosis                               V71.09

Axis III.     Deferred to medical exam

Axis IV.      Ongoing physical health problems with pain; Depression

               Severity:  3 - moderately severe

Axis V.      GAF:     56

### OPINION:

These are my responses in regard to the specific questions posed by the Industrial Commission. In my opinion, claimant has reached maximum medical improvement in regard to her allowed condition of "Major Depressive Disorder." This is based on the fact that claimant sustained her industrial injuries over 4-1/2 years ago, she continues to receive mental health treatment (counseling and medication), she has been in in counseling for 4 years and has been taking psychiatric medication for over 2 years, she continues to complain of physical pain and physical limitations due to her industrial injuries, a sense of loss of independence, and continuing depression. Based on AMA Guides, 2nd and 5th Editions, and with reference to the Industrial Commission Medical Examination Manual, I rate

claimant as having 35% impairment arising from the allowed psychological condition of "Major Depressive Disorder."

In regard to activities of daily living, claimant is rated as having Class 3, moderate impairment, in that her depression reduces her motivation to engage in routine activities, although claimant indicated that her physical problems also significantly interfere with her doing chores such as cooking, cleaning, and laundry.

In regard to social functioning, claimant is rated as having Class 3, moderate impairment, in that her depression reduces her interest and desire to be around others. She does have occasional contact with family members.

In regard to concentration, persistence, and pace for task completion, claimant is rated as having Class 3, moderate impairment. Her depression appears to interfere with short term memory functions and, correspondingly, at times with concentration and being persistent. During the present evaluation claimant was fairly well able to concentrate but did have some difficulty with memory.

In regard to claimant's adaption to the work setting, claimant is rated as having Class 3, moderate impairment. Her depression reduces her stress/frustration tolerance.

(Emphasis sic.)

{¶ 19} 12. Also on March 26, 2013, Dr. Berg completed a form captioned "Occupational Activity Assessment, Mental & Behavioral Examination." On the form, Dr. Berg indicated by his mark that relator is capable of work with limitations. In his own hand, Dr. Berg wrote the following limitations:

Claimant would have moderate limitations in her ability to understand, remember, and follow verbal directions.

Claimant would have moderate limitations in her ability to maintain attention and concentration in doing work related tasks. She would have moderate limitations in being persistent.

Claimant would have moderate limitations in her ability to respond appropriately to others in a work setting. Claimant would have moderate limitations in coping with work stress.

Claimant would function best in a relatively low stress setting.

{¶ 20} 13. On April 5, 2013, at the commission's request, relator was examined by Eugene Lin, M.D., who is board-certified in physical medicine and rehabilitation. In his eight-page narrative report, Dr. Lin opined:

> Review of the medical record showed objective findings consistent with a re-tear of the rotator cuff. There are also multiple findings in the medical records that the claimant's subjective complaints are out of proportion with objective findings. Despite the evidence of symptoms magnification, there have been recommendations that the claimant would be able to work in a sedentary basis. After review of the medical records, performing physical examination on the claimant and evaluating the enclosed reports with emphasis on imaging studies, the claimant would be able to work in a sedentary demand category based on the claimant's allowed condition. There would be the further restriction of no overhead work with the right upper extremity due to the objective evidence of a re-tear of the rotator cuff. Sedentary work would mean exerting up to 10 pounds of force occasionally and a negligible amount of force frequently.

{¶ 21} 14. On a Physical Strength Rating form, Dr. Lin indicated by his mark that relator is capable of "sedentary work." Under "[f]urther limitations, if indicated," Dr. Lin wrote: "[N]o overhead work."

{¶ 22} 15. Following a July 10, 2013 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's order explains:

> The Staff Hearing Officer finds that the Injured Worker's condition has become permanent and that she is unable to return to her former position of employment as a nursing assistant due to the allowed conditions in the claim.
>
> Dr. Lin, physician [sic] medicine and rehabilitation specialist, examined the Injured Worker at the request of the Industrial Commission. Dr. Lin opined that the Injured Worker's orthopedic conditions have reached maximum medical improvement. Dr. Lin opined that the Injured Worker would be able to work in a sedentary demand category based on the allowed conditions in the claim. Dr. Lin opined that the Injured Worker should do no overhead work with the right upper extremity due to the objective

evidence of a re-tear of the rotator cuff. Dr. Lin opined that the Injured Worker would be capable of engaging in sedentary work. Dr. Lin opined that sedentary work means exerting up to ten pounds of force occasionally and/or a negligible amount of force frequently. Dr. Lin opined that sedentary jobs involve sitting most of the time but may involve walking or standing for brief periods of time.

Dr. Berg, clinical psychologist examined the Injured Worker at the request of the Industrial Commission concerning the allowance of the condition of major depressive disorder in claim number 08-852242. Dr. Berg opined that the Injured Worker is capable of work with the following limitations based on the impairments arising from the allowed condition of major depressive disorder.

Dr. Berg opined that the Injured Worker would have moderate limitations in her ability to understand, remember and follow verbal directions. Dr. Berg opined that the Injured Worker would have moderate limitations in her ability to maintain attention and concentration in doing work related tasks. Dr. Berg opined that the Injured Worker would have moderate limitations in being persistent. Dr. Berg opined that the Injured Worker would have moderate limitations in her ability to respond appropriately to others in a work setting. Dr. Berg opined that the Injured Worker would have moderate limitations in coping with job stress. Dr. Berg opined that the Injured Worker would function best in a relatively low stress setting.

The Staff Hearing Officer finds that the capabilities listed by Dr. Lin and Dr. Berg are the capabilities the Injured Worker has as a result of the recognized conditions in the industrial claims. The Staff Hearing Officer finds that the Injured Worker is 58 years of age and has an 8th grade education. The Staff Hearing Officer notes from the Injured Worker's permanent total application that she is able to read, write and do basic math, but not well. The Staff Hearing Officer finds that the Injured Worker has a varied work history; performing jobs as a nurse's assistant, food service worker and packer. The Staff Hearing Officer finds that the Injured Worker as a nursing assistant, was responsible for caring for patients including feeding, bathing and dressing them. The Staff Hearing Officer finds that as a food service worker, the Injured Worker was responsible for preparing food, serving food and cleaning responsibilities. The Staff Hearing Officer

finds that as a packer the Injured Worker was responsible for putting items in boxes. The Staff Hearing Officer finds that while working at The Donut Shop the Injured Worker performed duties of cooking, serving and also working as a dishwasher. The Staff Hearing Officer finds that the Injured Worker as a packer would pack plastic bottles into containers. The Staff Hearing Officer finds that the Injured Worker has five industrial claims. The Staff Hearing Officer finds from the file that the Injured Worker is very hard working and has returned to work following her industrial accidents. The Staff Hearing Officer finds from the Injured Worker's Application for Permanent Total Disability that she last worked in 2008. The Staff Hearing Officer notes that the Injured Worker's last industrial claim has an injury date of 08/26/2008.

The Staff Hearing Officer finds that the Injured Worker has completed 30 weeks of job search services but was unable to secure alternative employment as a result of the vocational rehabilitation services. The Staff Hearing Officer finds that the vocational rehabilitation closure report of 05/30/2012 indicated that Ms. Young demonstrated from a work adjustment program that she could tolerate a different work environment. The vocational rehabilitation closure report indicated that Ms. Young's effort was excellent but she was limited in her work opportunities due to her 8th grade education and restrictions to sedentary employment. The closure report indicated that the case closure was recommended because of completion of services without finding employment. The vocational rehabilitation closure report indicates with the Injured Worker's participation that she has the aptitude to learn and the ability to be re-trained but the employment prospects currently existing in the economy did not result in a placement of a job for the Injured Worker. The Staff Hearing Officer finds that the Ohio Valley Goodwill Industries Work Adjustment Services Discharge Summary dated 01/18/2012 indicated that the Injured Worker has various strengths when it comes to employment. The discharge summary indicated that the Injured Worker has a valid drivers license and owns a vehicle, exhibited awareness of employer's expectations regarding skills, capable of following verbal instructions and demonstration, capable of learning new procedures/work tasks, demonstrated ability to focus on work tasks and is courteous and polite. The Staff Hearing Officer finds that

these vocational strengths are beneficial to an Injured Worker in securing future employment.

The Staff Hearing Officer finds that the Injured Worker's 8th grade education without a GED certificate is a negative vocational factor. The Staff Hearing Officer finds that the Injured Worker's education would negatively impact her in securing future employment. However the Staff Hearing Officer finds that the Injured Worker's age of 58, her past work experience as a nursing assistant, food service worker and packer shows that the Injured Worker is capable of learning new procedures and new tasks in different work environments. The Staff Hearing Officer notes that the Injured Worker's employment as a state tested nursing assistant indicates that the Injured Worker had the capability to interact with the public and demonstrate the ability to read/write/do basic math in performing these tasks. The Staff Hearing Officer finds that an Injured Worker's efforts in education re-training will be scrutinized by the Industrial Commission. The Staff Hearing Officer finds that the Injured Worker is 58 years of age with an 8th grade education and has the capability to pursue a GED certificate and further training to enhance her re-employment efforts. The Staff Hearing Officer finds that an Injured Worker is expected to engage in return to work efforts and efforts to improve re-employment potential. This is because permanent total compensation is compensation of the last resort to be awarded only when an Injured Worker's efforts at re-employment have failed. The [sic] State ex rel. Wilson v. Industrial Commission (1997) 80 Ohio St.3d 250, 253.

Based on a careful consideration of the above, as well as the evidence in file and at the hearing, the Staff Hearing Officer concludes that the Injured Worker is capable of performing sustained remunerative employment consistent with sedentary work. Therefore the Injured Worker is not permanently totally disabled.

Based on this analysis, the Staff Hearing Officer concludes that the Injured Worker retains the residual physical abilities and psychological capability to perform entry-level sedentary employment when combined with the Injured Worker's vocational assets as noted above. The Staff Hearing Officer concludes that the Injured Worker is able to engage in sustained remunerative employment. Accordingly, the Staff Hearing Officer finds that the Injured Worker is not

permanently and totally disabled and the Permanent Total Disability Application filed 01/03/2013 is denied.

{¶ 23} 16. On January 2, 2014, relator, Wanda Young, filed this mandamus action.

Conclusions of Law:

{¶ 24} Relator presents three issues: (1) whether the commission abused its discretion in failing to identify skills that are transferrable to the sedentary employment that relator can perform; (2) whether the commission abused its discretion in determining that relator is capable of learning new procedures and work tasks; and (3) whether the commission abused its discretion in determining that relator has the capacity to successfully pursue a GED certificate.

{¶ 25} The magistrate finds: (1) the commission did not abuse its discretion in failing to identify skills that are transferrable to the sedentary employment that relator can perform; (2) the commission did not abuse its discretion in determining that relator is capable of learning new procedures and work tasks; and (3) the commission did not abuse its discretion in determining that relator has the capacity to successfully pursue a GED certificate.

{¶ 26} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 27} Preliminarily, it can be noted that the SHO, in his order of July 10, 2013, relied upon the reports of Drs. Lin and Berg in determining residual functional capacity. Ohio Adm.Code 4121-3-34(B)(4). Dr. Lin found that relator is medically able to perform sedentary work with the further restriction of no overhead work with the right upper extremity. Moreover, Dr. Lin specifically noted that relator is capable of exerting up to ten pounds of force occasionally and a negligible amount of force frequently.

{¶ 28} Dr. Berg found that relator has "moderate impairment" in her ability to understand, remember, and follow verbal directions. She has "moderate impairment" to maintain her attention and concentration in doing work-related tasks. She has "moderate limitations" in being persistent. She has "moderate limitations" in her ability to respond appropriately to others in a work setting. She has "moderate limitations" in coping with work stress. Relator would function best in a relatively low-stress setting.

{¶ 29} Here, relator does not challenge the commission's reliance upon the reports of Drs. Lin and Berg. Relator does not challenge the commission's determination of residual functional capacity.

{¶ 30} However, relator does challenge the commission's consideration and analysis of the non-medical factors, raising the three issues noted above.

### First Issue

{¶ 31} Ohio Adm.Code 4121-3-34 sets forth the commission's rules applicable to its adjudication of PTD applications.

{¶ 32} Ohio Adm.Code 4121-3-34(B) sets forth definitions.

{¶ 33} Ohio Adm.Code 4121-3-34(B)(3) is captioned "Vocational factors." Thereunder, Ohio Adm.Code 4121-3-34(B)(3)(c) is captioned "Work experience." Thereunder, the Ohio Administrative Code provides:

> (iv) "Transferability of skills" are skills that can be used in other work activities. Transferability will depend upon the similarity of occupational work activities that have been performed by the injured worker. Skills which an individual has obtained through working at past relevant work may qualify individuals for some other type of employment.
>
> (v) "Previous work experience" is to include the injured worker's usual occupation, other past occupations, and the skills and abilities acquired through past employment which demonstrate the type of work the injured worker may be able to perform. Evidence may show that an injured worker has the training or past work experience which enables the injured worker to engage in sustained remunerative employment in another occupation. The relevance and transferability of previous work skills are to be addressed by the adjudicator.

{¶ 34} In *State ex rel. Ewart v. Indus. Comm.*, 76 Ohio St.3d 139 (1996), the Supreme Court of Ohio upheld the commission's order denying PTD compensation. As here, the claimant's challenge to the commission's order focused upon the commission's analysis of the non-medical factors. The Supreme Court states:

> Claimant worked for Refiners Transport and Terminal as a trucker for twenty-two years. Claimant's long tenure can be viewed negatively because it prevented the acquisition of a

> broader range of skills that more varied employment might have provided. It also, however, suggests a stable, loyal and dependable employee worth making an investment in. This is an asset and is an interpretation as valid as the first.
>
> Claimant's lack of transferable skills also does not mandate a permanent total disability compensation award. A permanent total disability compensation assessment examines both claimant's current and future, *i.e.,* potentially developable, abilities. An absence of transferable skills is germane to this inquiry. However, as the appellate court referee observed, "the nonexistence of transferable skills from relator's truck driving experience would not be of critical importance when the issue becomes whether the claimant can be retrained for another occupation."

*Id.* at 142.

{¶ 35} Here, it can be observed that the SHO's order of July 10, 2013 does not identify skills relator may have obtained during her work history that may be transferrable to another occupation that relator is medically able to perform. Presumably, the SHO did not find the transferability of skills as that term is found at Ohio Adm.Code 4121-3-34(B).

{¶ 36} Clearly, neither the commission's rules applicable to the adjudication of PTD applications nor case law require the commission or its hearing officers to find transferability of skills or to address transferability where transferable skills may be lacking.

{¶ 37} Relator here points out that the SHO's order of July 10, 2013 accepts the so-called "vocational strengths" set forth in the Goodwill summary and finds them beneficial to relator in securing future employment. Relator then endeavors to point out that the "vocational strengths" that were found to be beneficial to securing future employment are not transferrable skills within the meaning of Ohio Adm.Code 4121-3-34(B)(3)(c)(iv). According to relator, the "vocational strengths" are "traits that involve an innate aptitude or ability of a worker." (Relator's brief, 11.) However, even if relator is correct in her assertion that the vocational strengths are not transferrable skills, the absence of transferrable skills does not mandate a PTD award, and the commission has not abused its discretion in failing to identify transferrable work skills. *Ewart.*

## Second Issue

{¶ 38} As earlier noted, the second issue is whether the commission abused its discretion in determining that relator is capable of learning new procedures and work tasks.

{¶ 39} On the second issue, relator points out that she has an 8th grade education and no GED. She enrolled in a bureau vocational rehabilitation program that resulted in a closure report indicating that she was not a candidate to take the GED test.

{¶ 40} Relator also points to the report of Dr. Berg who opined that relator has "moderate limitations" in various areas. Relator then invites this court to conclude that she is incapable of learning new work procedures and tasks. In effect, relator is asking this court to reweigh the evidence, something that this court shall not do in a mandamus action.

{¶ 41} Primarily, the SHO determined that relator is capable of learning new procedures and work tasks by analyzing the work history, which shows that relator is a state-tested nursing assistant and has held jobs as a food service worker and packer. The SHO found that relator has demonstrated through her work history that she has the ability to read, write, and do basic math.

{¶ 42} In short, the commission did not abuse its discretion in determining that relator is capable of learning new procedures and work tasks.

## Third Issue

{¶ 43} The third issue is whether the commission abused its discretion in determining that relator has the capacity to successfully pursue a GED certificate.

{¶ 44} The commission may reject the conclusion of a rehabilitation report and draw its own conclusion from the same non-medical information. *Ewart* at 141.

{¶ 45} Moreover, while the commission may credit offered vocational evidence, expert opinion is not critical or even necessary because the commission is the expert on this issue. *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266 (1997).

{¶ 46} In the Goodwill summary dated January 18, 2012, which was approved by two Goodwill evaluators, it is stated:

> Without a GED, Wanda's other vocational interest, working with computers, would be unlikely. At this time, her

academic skills, concentration and attention to detail would indicate that she would struggle with obtaining her GED and computer training.

The bureau's closure report of May 30, 2012 states:

Ms. Young also had a GED assessment and studied for the test on her own. Her academic levels were so low that it was impossible to assess how long it would take her to be able to reach a level when she could take the GED so this was not a focus of her plan services.

{¶ 47} Relator suggests here that the SHO was bound by the Goodwill summary and the bureau's closure report in determining relator's capacity for successful pursuit of a GED. This suggestion is incorrect. The SHO was not bound by either the Goodwill summary or the bureau's closure report.

{¶ 48} Rather, the SHO pursued his own analysis as he is authorized to do as the expert on the non-medical issues. The SHO reasoned:

The Staff Hearing Officer finds that the Injured Worker's 8th grade education without a GED certificate is a negative vocational factor. The Staff Hearing Officer finds that the Injured Worker's education would negatively impact her in securing future employment. However the Staff Hearing Officer finds that the Injured Worker's age of 58, her past work experience as a nursing assistant, food service worker and packer shows that the Injured Worker is capable of learning new procedures and new tasks in different work environments. The Staff Hearing Officer notes that the Injured Worker's employment as a state tested nursing assistant indicates that the Injured Worker had the capability to interact with the public and demonstrate the ability to read/write/do basic math in performing these tasks. The Staff Hearing Officer finds that an Injured Worker's efforts in education re-training will be scrutinized by the Industrial Commission. The Staff Hearing Officer finds that the Injured Worker is 58 years of age with an 8th grade education and has the capability to pursue a GED certificate and further training to enhance her re-employment efforts.

{¶ 49} Thus, in rejecting the conclusions in the Goodwill summary and the bureau's closure report regarding relator's ability to pursue a GED certificate, the SHO

alternatively analyzed relator's work history which includes work as a state-tested nursing assistant. The SHO noted that being a state-tested nursing assistant would require an ability to read, write and do basic math. The SHO's analysis which is extensively set forth in his order is as valid as any reliance upon the Goodwill summary and the bureau closure report. Again, as the expert on this issue, the SHO is the ultimate evaluator—not the rehabilitation counselors.

{¶ 50} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).