[Cite as *State ex rel. Young v. Butler Cty. Personnel Office*, 2016-Ohio-8341.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Wanda M. Young, | : | |
| Relator, | : | |
| v. | : | No. 15AP-1035 |
| Butler County Personnel Office and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

D E C I S I O N

Rendered on December 22, 2016

---

**On brief:** *Lisa M. Clark*, and *Mark B. Weisser,* for relator.

**On brief:** *McCracken & Martin LLC*, and *Kyle D. Martin,* for respondent Butler County Personnel Office.

**On brief:** *Michael DeWine*, Attorney General, and *Amanda B. Brown*, for respondent Industrial Commission of Ohio.

---

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

DORRIAN, P.J.

{¶ 1} Relator, Wanda M. Young, filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its September 9, 2015[1] order which denied her application for permanent total disability ("PTD") compensation after finding that relator had voluntarily

---

[1] On September 1, 2015, a staff hearing officer held a hearing on relator's request for PTD compensation. On September 2, 2015, the order denying the request was typed, and on September 9, 2015 the order was mailed. We will refer to the order pursuant to the date it was mailed, September 9, 2015.

abandoned the workforce, and ordering the commission to reconsider her application and grant her PTD compensation.

{¶ 2}  Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto.  The magistrate recommends this court deny relator's request for a writ of mandamus.

{¶ 3}  Relator has filed the following objection to the magistrate's decision:

> The Staff Hearing Officer's decision concluding the Claimant voluntarily abandoned the workforce, which was never raised by the Employer at the PTD hearing, constitutes an abuse of discretion.

{¶ 4}  The argument raised in the objection is essentially the same as that raised to and addressed by the magistrate.

{¶ 5}  The magistrate rejected this argument.  The magistrate observed the relevant inquiry in the determination of PTD is the claimant's ability to do any sustained remunerative employment.  Further, the magistrate cited Ohio Adm.Code 4121-3-34(D)(1)(d) which states:

> If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.

{¶ 6}  The magistrate noted the regulation requires that "if evidence of voluntary removal or retirement is made an issue, the hearing officer must consider evidence of the claimant's medical condition at or near the time of removal/retirement."  (Appended Magistrate's Decision at ¶ 44.)  This is so a determination can be made if the claimant is not medically capable of participating in vocational rehabilitation services or working, and therefore abandonment of the workforce is not voluntary.

{¶ 7}  The magistrate also rejected the argument that voluntary abandonment should not have been found because the evidence establishes that any further attempts at vocational rehabilitation would have been in vain.  The magistrate noted that relator did complete vocational rehabilitation in 2012; and in July 2013, a staff hearing officer

("SHO") determined she was capable of sedentary work activity and, thus, some sustained remunerative employment. Nevertheless, despite the vocational rehabilitation specialist's opinion that relator was capable of pursuing an independent job search and engaging in sustained remunerative employment, relator did not do so.

{¶ 8} Finally, the magistrate rejected the argument that relator was incapable of working pursuant to Dr. Tricia M. Giessler's opinion and, thus, incapable of looking for work. Again, the magistrate noted the July 2013 SHO determination that, even considering the allowed physical and psychological conditions, relator was capable of performing sustained remunerative employment. The magistrate noted that Dr. Giessler's opinion was not obtained until December 2014, and that relator made no effort to secure employment between the SHO's July 2013 determination and Dr. Giessler's December 2014 opinion. In her brief, relator also refers to the opinion of Dr. Kenneth J. Manges. Dr. Manges' report was obtained even later than Dr. Giessler's opinion, in June 2015.

{¶ 9} We have carefully considered relator's objection and arguments and reviewed the joint stipulation of evidence as well. For the reasons outlined in the magistrate's decision, we disagree with relator that the commission abused its discretion in concluding that relator voluntarily abandoned the workforce and, therefore, is not eligible for PTD compensation.

{¶ 10} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objection, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule relator's objection to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, the requested writ of mandamus is hereby denied.

*Objection overruled;*
*writ of mandamus denied.*

TYACK and LUPER SCHUSTER, JJ., concur.

————————

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Wanda M. Young, | : | |
| Relator, | : | |
| v. | : | No. 15AP-1035 |
| Butler County Personnel Office and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on June 15, 2016

*Lisa M. Clark,* and *Mark B. Weisser,* for relator.

*McCracken & Martin, LLC,* and *Kyle D. Martin,* for respondent Butler County Personnel Office.

*Michael DeWine*, Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 11} Relator, Wanda M. Young, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied her application for permanent total disability ("PTD") compensation after finding that she had voluntarily removed herself from the workforce, and ordering the commission to reconsider her application and grant it.

Findings of Fact:

{¶ 12} 1. Relator has four industrial claims arising out of her employment as a nursing assistant at the Butler County Care Facility. The commission lists the employer as the Butler County Personnel Office.

{¶ 13} 2. On June 24, 2005, relator sustained an industrial injury (claim No. 05-369290), which is allowed for:

> Sprain left elbow; left lateral epicondylitis; tendinopathy of the brachial tendon left elbow; partial tear of brachial tendon left.

{¶ 14} 3. On October 29, 2006, relator sustained an industrial injury (claim No. 06-394743), which is allowed for:

> Right shoulder sprain; impingement syndrome right shoulder; rotator cuff tear right shoulder; synovitis right shoulder.

{¶ 15} 4. On May 2, 2007, relator sustained an industrial injury (claim No. 07-825779), which is allowed for:

> Sprain lumbosacral; substantial aggravation L4-5 and L5-S1 spondylosis; bilateral posterior superior iliac spine tendonitis.

{¶ 16} 5. On August 26, 2008, relator sustained an industrial injury (claim No. 08-852242), which is allowed for:

> Sprain of neck; sprain of right knee and leg; substantial aggravation pre-existing right knee chondromalacia; major depressive disorder.

{¶ 17} 6. The record contains a five-page document dated January 18, 2012 captioned "Ohio Valley Goodwill Industries Work Adjustment Services Discharge Summary." The Goodwill summary indicates that, during November and December 2011, relator participated in a four-week transition program designed to assist her to find new employment.

{¶ 18} The Goodwill summary assesses relator's "strengths" and "barriers" to employment:

**STRENGTHS:**

- Provided documentation necessary to complete the Employment Eligibility Verification (I-9) form required of all newly hired employees
- Has valid driver's license and own[s] vehicle
- Exhibited awareness of employers' expectations regarding "soft" skills
- Capable of following verbal instructions and demonstrations
- Capable of learning new procedures/work tasks
- Demonstrated ability to focus on work tasks
- Courteous, polite
- Exhibited sufficient stamina for a four-hour workday on sedentary jobs

**BARRIERS TO EMPLOYMENT:**

- No recent work history
- Lacks high school education/GED
- Physical limitations including no lifting over 20 lbs and only occasional lifting of 20 lbs or less; no squatting/kneeling; bending, twisting, reaching below knee, pushing/pulling, standing/walking limited to occasionally; sitting and lifting above the shoulders limited to frequently

The Goodwill summary concludes:

**DESIRED OUTCOMES AND EXPECTATIONS ESTABLISHED/ACHIEVED:**

Wanda was referred for Work Adjustment services to assess her ability to transition to different types of work while assessing her work behaviors, assets and deficits for employment.

Wanda demonstrated the ability to easily transition to different types of work and exhibited the work behaviors expected of a competitive employee. She was attentive when directions were provided, retained instructions and was capable of working independently. Wanda's physical restrictions and limited stamina for more than a four-hour day in a sedentary position would appear to be insurmountable barriers to obtaining employment in a retail position, as she desired.

Without a GED, Wanda's other vocational interest, working with computers, would be unlikely. At this time, her academic skills, concentration and attention to detail would indicate that she would struggle with obtaining her GED and computer training.

**REASONS FOR DISCHARGE:**

Wanda completed her four-week adjustment program.

{¶ 19} 7. The record contains a one-page document captioned "Vocational Rehabilitation Closure Report," which is a form (RH-21) of the Ohio Bureau of Workers' Compensation ("BWC"). The document was approved by a vocational rehabilitation case manager on May 30, 2012. The document states:

Ms. Young's case was assigned to this case manager on 10/20/11. Barriers identified for Ms. Young included, sedentary work restrictions and no GED. A four week work adjustment program was recommended and Ms. Young demonstrated that she could tolerate a different work environment. Based on this JSST and job search services were recommended. Ms. Young also had a GED assessment and studied for the test on her own. Her academic levels were so low that it was impossible to assess how long it would take her to be able to reach a level when she could take the GED so this was not a focus of her plan services. Ms. Young completed JSST and 20 weeks of job search services. Ms. Young's effort was excellent, she was extremely limited in her work opportunities due to her education and restrictions. Case closure was recommended for completion of services without finding employment.

{¶ 20} 8. On January 3, 2013, relator filed an application for PTD compensation on a form provided by the commission.

{¶ 21} 9. The PTD application form asks the applicant for information regarding her education. On the form, relator indicated that the eighth grade was the highest grade of school completed and this occurred in 1969. She did not complete her GED nor did she attend a trade or vocational school, nor other specialized training. She noted further that she could read, write, and perform basic math, but not well.

{¶ 22} 10. Following a July 10, 2013 hearing, a staff hearing officer ("SHO") issued an order denying her PTD application. The SHO relied on medical evidence to find that

relator could perform sedentary work with no overhead work with her right upper extremity. Further, the SHO relied on medical evidence that relator's allowed psychological condition did not preclude relatively low stress employment. The SHO's order explains:

> The Staff Hearing Officer finds that the Injured Worker is 58 years of age and has an 8th grade education. The Staff Hearing Officer notes from the Injured Worker's permanent total application that she is able to read, write and do basic math, but not well. The Staff Hearing Officer finds that the Injured Worker has a varied work history; performing jobs as a nurse's assistant, food service worker and packer.
>
> * * *
>
> The Staff Hearing Officer finds that the Injured Worker has completed 30 weeks of job search services but was unable to secure alternative employment as a result of the vocational rehabilitation services. The Staff Hearing Officer finds that the vocational rehabilitation closure report of 05/30/2012 indicated that Ms. Young demonstrated from a work adjustment program that she could tolerate a different work environment. The vocational rehabilitation closure report indicated that Ms. Young's effort was excellent but she was limited in her work opportunities due to her 8th grade education and restrictions to sedentary employment. The closure report indicated that the case closure was recommended because of completion of services without finding employment. The vocational rehabilitation closure report indicates with the Injured Worker's participation that she has the aptitude to learn and the ability to be re-trained but the employment prospects currently existing in the economy did not result in a placement of a job for the Injured Worker. The Staff Hearing Officer finds that the Ohio Valley Goodwill Industries Work Adjustment Services Discharge Summary dated 01/18/2012 indicated that the Injured Worker has various strengths when it comes to employment. The discharge summary indicated that the Injured Worker has a valid drivers license and owns a vehicle, exhibited awareness of employer's expectations regarding skills, capable of following verbal instructions and demonstration, capable of learning new procedures/work tasks, demonstrated ability to focus on work tasks and is courteous and polite. The Staff Hearing Officer finds that these vocational strengths are beneficial to an Injured Worker in securing future employment.

The Staff Hearing Officer finds that the Injured Worker's 8th grade education without a GED certificate is a negative vocational factor. The Staff Hearing Officer finds that the Injured Worker's education would negatively impact her in securing future employment. However the Staff Hearing Officer finds that the Injured Worker's age of 58, her past work experience as a nursing assistant, food service worker and packer shows that the Injured Worker is capable of learning new procedures and new tasks in different work environments. The Staff Hearing Officer notes that the Injured Worker's employment as a state tested nursing assistant indicates that the Injured Worker had the capability to interact with the public and demonstrate the ability to read/write/do basic math in performing these tasks. The Staff Hearing Officer finds that an Injured Worker's efforts in education re-training will be scrutinized by the Industrial Commission. The Staff Hearing Officer finds that the Injured Worker is 58 years of age with an 8th grade education and has the capability to pursue a GED certificate and further training to enhance her re-employment efforts. The Staff Hearing Officer finds that an Injured Worker is expected to engage in return to work efforts and efforts to improve re-employment potential. This is because permanent total compensation is compensation of the last resort to be awarded only when an Injured Worker's efforts at re-employment have failed. The [sic] State ex rel. Wilson v. Industrial Commission (1997) 80 Ohio St.3d 250, 253.

Based on a careful consideration of the above, as well as the evidence in file and at the hearing, the Staff Hearing Officer concludes that the Injured Worker is capable of performing sustained remunerative employment consistent with sedentary work. Therefore the Injured Worker is not permanently totally disabled.

{¶ 23} 11. On January 2, 2014, relator, Wanda Young, filed a mandamus action in this court. *State ex rel. Young v. Indus. Comm.,* 10th Dist. No. 14AP-3, 2014-Ohio-5331. In that case, three issues were presented: (1) whether the commission abused its discretion in failing to identify skills that were transferrable to the sedentary employment that relator could perform; (2) whether the commission abused its discretion in determining that relator was capable of learning new procedures and work tasks; and (3)

whether the commission abused its discretion in determining that relator had the capacity to successfully pursue a GED certificate.

{¶ 24} The magistrate found: (1) the commission did not abuse its discretion by not identifying skills that were transferrable to the sedentary employment that relator could perform; (2) the commission did not abuse its discretion in determining that relator was capable of learning new procedures and work tasks; and (3) the commission did not abuse its discretion in determining that relator had the capacity to successfully pursue a GED certificate.

{¶ 25} No objections were filed and this court adopted the magistrate's decision as its own.

{¶ 26} 12. After the magistrate's decision was released and before this court adopted that decision, relator was again referred for vocational rehabilitation.

{¶ 27} 13. In a letter dated November 19, 2014, relator was informed that she was not feasible for vocational rehabilitation services for the following reasons:

> [Injured Worker] has been given the tools and taught the skills necessary for an independent Job Search. There are no other services to offer based on prior vocational rehabilitation test results and services previously rendered. The certified vocational evaluation in 2012 finds cognitive deficits that do not warrant short/long term training. The injured worker was provided thirty weeks of job search with the assistance of job placement and development professionals. No new and changed circumstances within the injured workers' [sic] restrictions since 2012 nor increase in educational level are founded upon review of the claim file.

{¶ 28} 14. Relator had the opportunity to appeal this decision; however, she chose not to do so.

{¶ 29} 15. In a letter dated November 13, 2014, Dr. Paley noted that a recent MRI of relator's right shoulder demonstrated a probable re-tear and damage to her rotator cuff. He noted further that she continued to have persistent symptoms associated with her right knee and low back. Dr. Paley indicated that relator would require considerable supportive care along with ongoing medication, including low-dose narcotic medication. Dr. Paley opined that relator was permanently and totally disabled, stating:

> It is my opinion that Ms. Young is going to require considerable supportive care along with ongoing medication,

including low-dose narcotic medication which will leave her, in my opinion, a less than desirable candidate for return to gainful employment.

More likely than not, Ms. Young will require multiple lost work days every month. She will require fairly restricted work activity that will require frequent breaks.

Given all of the above, combined with the fact that she is going to require fairly restricted and limited duty, I believe that Ms. Young not only is incapable of significant gainful employment, but she is going to have a difficult time holding or maintaining any type of reasonable employment on a regular basis.

While I am not usually a fan of permanent total disability benefits, in this particular case, given the nature of these injuries and the required treatment, including the use of narcotic medications, I believe that fifty-nine-year-old Ms. Young is going to have a very difficult time returning to gainful employment. In all honesty, this is the type of patient that potential employers shy away from as the restrictions are simply too burdensome upon the employers.

After careful consideration of the claim allowances and related residual disability, it is my professional opinion, rendered within the realm of reasonable medical probabilities, that Ms. Young is permanently and totally disabled.

{¶ 30} 16. Relator filed her second application for PTD compensation on January 6, 2015. Relator's second application was supported by the December 19, 2014 report of Tricia M. Giessler, Psy.D., her treating clinical psychologist. Dr. Giessler opined that relator's major depressive disorder, along with her allowed physical conditions, rendered her permanently and totally disabled.

{¶ 31} 17. An independent psychological report dated February 25, 2015 was completed by Donald J. Tosi, Ph.D. In that report, Dr. Tosi listed relator's allowed conditions and identified the medical records which he reviewed. Dr. Tosi found mild impairments with regard to activities of daily living, social interactions, adaptation, as well as concentration, persistence, and pace. Dr. Tosi administered the Million Clinical Multi Axial Inventory-III ("MCMI-III") and noted the following relevant findings:

Testing had such a severe "fake bad" exaggeration of pathology that test results are probably grossly distorted and invalid. If not due to numbering or to reading problems, this may represent either a cry for help or conscious malingering.

Ms. Young is not reflective or thoughtful which can limit insight and judgment. She does not try to understand the world in cognitive, rational ways.

Concentration difficulties are probable with Ms. Young being distractible, preoccupied, and inattentive. This may cause Ms. Young to miss important environmental cues leading to decreased judgment and coping.

Due to her cognitive style, Ms. Young may have severe difficulty learning from her experiences and may repeatedly make the same mistakes.

Test scores may indicate a Major Depression or may represent a severe Adjustment Disorder.

Impulse control is poor with Ms. Young impulsively acting out without consideration of alternatives. She acts directly on feelings to gain immediate gratification with little forethought.

Ms. Young's reported energy level is within the Normal range.

Testing indicates significant Borderline Personality features.

Testing indicates significant Schizoid, Dependent, and Passive-Aggressive features that are likely to affect daily functioning.

Ms. Young denies most of her emotions, especially anger, hurt, and resentment. Even so, Ms. Young tends to be irritable and malcontent as anxiety, negativity, and anger exist since Ms. Young believes that she "got a raw deal from life." Underlying worry and anger can result in mood swings and be expressed through subtle attacks, blame, insults, and complaints.

{¶ 32} Dr. Tosi opined that, from a psychological standpoint, relator was capable of returning to remunerative employment and would function best in low-moderate work stress and tasks that would be simple to moderate in complexity.

{¶ 33} 18. The record also contains the June 6, 2015 report of Kenneth J. Manges, Ph.D. After identifying the allowed conditions in relator's claims and identifying the medical records which he reviewed, Dr. Manges determined that relator had a Class 3 moderate whole person psychological impairment of 30 percent. Dr. Manges completed an occupational activity assessment indicating that, in his opinion, relator was incapable of work.

{¶ 34} 19. Stephen S. Wunder, M.D., examined relator concerning her allowed physical conditions. In his March 9, 2015 report, Dr. Wunder identified the allowed conditions in relator's claims, identified the medical records which he reviewed, and provided his physical findings on examination. Concerning her shoulder, Dr. Wunder noted that relator informed him that updated imaging studies suggested a recurrent rotator cuff tear and consideration of a shoulder replacement. In that regard, Dr. Wunder stated:

> However, the MRI that was forwarded to me dated October 26, 2014, showed a chronic tear of the anterior labrum and did not show any evidence of a recurrent rotator cuff tear. Her subjective complaints are not supported by objective findings, and there are many nonorganic findings present.

{¶ 35} Dr. Wunder opined that relator's allowed physical conditions had reached maximum medical improvement and that relator would be capable of performing sustained remunerative employment as follows:

> Considering only the allowed conditions in the listed claims, the claimant would be capable of returning to sustained remunerative employment. She would be capable of at least a full range of sedentary work, which would include lifting up to 10 pounds occasionally and lesser amounts of weight more frequently. She would have to do sit-down type of work. I do not believe she could work from heights and with the right knee I do not think she could crawl or kneel.

{¶ 36} 20. The commission referred relator to Matthew F. Burton, M.D. In his May 12, 2015 report, Dr. Burton identified the allowed conditions in relator's claims and provided his physical findings on examination. Ultimately, Dr. Burton concluded that relator had an 18 percent whole person impairment and that she would be capable of

performing sedentary work activity despite her shoulder surgery and functional limitations.

{¶ 37} 21. Relator's application was heard before an SHO on September 1, 2015. The SHO denied relator's application finding that she had voluntarily removed herself from the workplace. The SHO explained:

> By way of history, the Injured Worker's prior Application for Permanent Total Disability Compensation filed 01/03/2013, was denied by Staff Hearing Officer order dated 07/10/2013. This denial was later affirmed by a decision from the Court of Appeals of Ohio, 10th Appellate District, in a decision dated 12/02/2014.
>
> One month later, on 01/06/2015, the Injured Worker filed a virtually identical Application for Permanent Total Disability Compensation.
>
> When the Injured Worker's prior Application for Permanent Total Disability Compensation was denied by Staff Hearing Officer order dated 07/10/2013, the Staff Hearing Officer considered all medical evidence on file at that time, in conjunction with the Injured Worker's non-medical disability factors, and concluded that the Injured Worker was capable of engaging in sustained remunerative employment. Further, this finding was affirmed by the 10th District Court of Appeals.
>
> Despite the finding that the Injured Worker was capable of engaging in sustained remunerative employment, the Injured Worker has not returned to work, engaged in a job search, or made any other attempt to return to the workforce since 07/10/2013.
>
> At hearing, the Injured Worker argued that she attempted to participate in vocational rehabilitation services in November of 2014, but her application was denied. The Injured Worker specifically argued that the fact that she applied for vocational rehabilitation constitutes her best and most sincere effort to seek employment and return to the workforce.
>
> The Staff Hearing Officer rejects this argument.
>
> Significantly, the Vocational Rehabilitation Closure Report issued by Mr. Mark Pauley, Vocational Rehabilitation

Specialist, dated 11/19/2014, indicates that the Injured Worker is not a viable candidate to participate in vocational rehabilitation for the reason that the Injured Worker has already completed the vocational rehabilitation process in 2012. Mr. Pauley indicates that the Injured Worker is not a good candidate to participate in vocational rehabilitation in 2014 because there are no additional skills or services available through vocational rehabilitation. Mr. Pauley indicates that the Injured Worker has been given the tools and taught the necessary skills to conduct an independent job search.

Despite Mr. Pauley's finding that the Injured Worker has the skills necessary to conduct an independent job search, the Injured Worker has opted not to do so.

Further, the Staff Hearing Officer finds that the Injured Worker's application to participate in vocational rehabilitation in 2014 does not constitute the Injured Worker's best and most sincere attempt to gain acceptance into vocational rehabilitation. Expressly, the Managed Care Organization denial dated 11/19/2014 could have been appealed to the Industrial Commission for adjudication. The Injured Worker opted not to pursue her application any further and no appeal was ever taken.

Therefore, the Staff Hearing Officer finds that the Injured Worker voluntarily abandoned the workforce on 07/10/2013 when a Staff Hearing Officer made a specific finding that the Injured Worker was capable of engaging in sustained remunerative employment and the Injured Worker opted not to make any attempt to do so.

Therefore, the Staff Hearing Officer finds the Injured Worker ineligible to receive permanent total disability compensation pursuant to Ohio Adm.Code 4121-3-34(D)(1)(d).

{¶ 38} 22. Relator's request for reconsideration was denied by order of the commission mailed October 22, 2015.

{¶ 39} 23. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 40} Relator's sole argument is that the commission abused its discretion by concluding that she had voluntarily abandoned the workforce, an issue which was never

raised by the employer at the hearing. For the reasons that follow, the magistrate rejects relator's argument.

{¶ 41} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 42} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 43} Ohio Adm.Code 4121-3-34(D) sets forth the commission's guidelines for the adjudication of PTD applications. Thereunder, Ohio Adm.Code 4121-3-34(D)(1)(d) provides:

> If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.

{¶ 44} Relator contends that pursuant to Ohio Adm.Code 4121-3-34(D)(1)(d), the commission may only consider whether a claimant voluntarily removed themself from the workforce if the issue is raised. However, that is not what the regulation provides. Instead, the regulation requires that, if evidence of voluntary removal or retirement is made an issue, the hearing officer must consider evidence of the claimant's medical

condition at or near the time of removal/retirement. This is always a factor when the commission considers whether or not a claimant has voluntarily removed themselves from the workforce because if a claimant is not medically capable of participating in vocational rehabilitation services or working, then the claimant cannot voluntarily abandon the workforce.

{¶ 45} Relator also contends that the evidence establishes that any further attempts at vocational rehabilitation would have been in vain. As such, relator asserts the SHO should not have found voluntary abandonment. However, the magistrate disagrees. As noted in the findings of fact, relator did complete vocational rehabilitation in 2012, prior to the filing of her first application for PTD compensation. In the commission's order denying her first application for PTD compensation, the SHO recognized that relator had not been able to secure employment while participating in vocational rehabilitation services. However, in finding that she was able to perform sedentary work activity with limitations regarding her right shoulder, the SHO determined that she was capable of some sustained remunerative employment.

{¶ 46} After her first application was denied, relator was referred for further vocational rehabilitation services. However, based on a finding that she had already been given the tools and taught the skills necessary for an independent job search and because there were no new and changed circumstances in her restrictions since 2012, she was deemed not feasible for further vocational rehabilitation participation. Despite the finding by the commission in denying her first application for PTD compensation and the vocational rehabilitation specialist's opinion that she was capable of pursuing an independent job search and engaging in sustained remunerative employment, relator acknowledges that she did not do so. Because the commission found, in 2013, that she was capable of securing employment, her failure to do so can be considered by the commission as evidence that she chose not to. The voluntary nature of abandonment of employment is a factual question for the commission to determine on a case-by-case basis. *See State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm.*, 45 Ohio St.3d 381 (1989) and *State ex rel. Floyd v. Formica Corp.,* 140 Ohio St.3d 260, 2014-Ohio-3614.

{¶ 47} Relator also argues that, from a psychological standpoint, she was incapable of working and, as such, is incapable of looking for work. Relator's argument ignores the fact that, in July 2013, the commission determined that both the allowed physical and psychological conditions permitted her to perform sustained remunerative employment. Despite this finding, relator acknowledges she did not look for work. It was not until December 2014 that Dr. Giessler opined that her psychological condition precluded employment. Relator made no effort to secure employment in those 18 months. Had she sought employment, she may or may not have been successful. Given her failure to even try to find work, the magistrate finds that the commission did not abuse its discretion in finding that she voluntarily abandoned the workforce.

{¶ 48} Finding that the commission did not abuse its discretion and finding that relator's failure to make a job search or secure employment after her first application for PTD compensation was denied constitutes some evidence upon which the commission could rely to find that she had voluntarily abandoned the workforce, and the magistrate finds that the commission did not abuse its discretion in denying her application for PTD compensation. As such, this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).