[Cite as *State ex rel. Cook v. Indus. Comm.*, 2016-Ohio-8497.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


| | | |
|---|---|---|
| The State ex rel. Denzil Cook, | : | |
| Relator, | : | |
| v. | : | No. 15AP-1025 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Dominion Homes, Inc., | : | |
| Respondents. | : | |

---

# D E C I S I O N

Rendered on December 29, 2016

---

**On brief:** *Law Office of Stanley R. Jurus,* and *Frank A. Vitale,* for relator.

**On brief:** *Michael DeWine,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

SADLER, J.

{¶ 1} Relator, Denzil Cook, commenced this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order exercising continuing jurisdiction over and vacating a June 5, 2015 order of a staff hearing officer ("SHO") and to direct the commission to issue an order awarding relator permanent total disability ("PTD") compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued the appended decision,

including findings of fact and conclusions of law.  The magistrate determined that because the SHO's order contained a clear mistake of law, the commission did not abuse its discretion when it exercised continuing jurisdiction over the SHO's order.  As a result, the magistrate recommended that this court deny the requested writ of mandamus.  For the following reasons, we overrule relator's objections and deny the requested writ.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 3}   None of the parties have filed objections to the magistrate's findings of fact, and following an independent review of the record, we adopt those findings as our own. As more fully set forth in the magistrate's decision, relator sustained a work-related injury in 1967 when he was 20 years old, and his industrial claim was allowed for acute lumbar myositis and depressive neurosis.  Over the next 40 years, relator worked for several employers in various positions such as a truck driver, machine operator, and warehouse laborer.  Relator ceased working in November 2008 when he was laid off from seasonal construction work.  Relator filed three applications for PTD compensation over the next several years.  His first two applications, filed in 2010 and 2013, were both denied by SHO orders finding relator capable of performing sustained remunerative employment. During a hearing regarding the 2013 application, relator testified that he stopped working in 2008 because he could not keep up or do the work, which included heavy lifting and cleaning dump truck beds, any longer.

{¶ 4}   Relator filed his third application for PTD compensation, the subject of this action, in February 2015.  In opposing the application, the Ohio Bureau of Workers' Compensation ("BWC") argued that relator voluntarily abandoned the workforce following the commission's 2010 and 2013 denials of PTD compensation.  On June 5, 2015, the SHO granted relator's application for PTD compensation based on an April 12, 2015 report of a doctor finding relator unable to perform any sustained remunerative employment due to the allowed medical conditions.  The SHO found the BWC's argument regarding voluntary abandonment of the workforce incorrect because relator's hearing testimony from 2013 referencing why he stopped working in 2008 "was not the answer of someone just trying to voluntarily abandon the workforce."  (June 5, 2015 SHO Order at 2.)

{¶ 5} The BWC requested reconsideration of the SHO's June 5, 2014 order. Following a hearing, the commission found that the BWC met its burden of proving that the SHO order contains a clear mistake of law to support the commission's exercise of continuing jurisdiction. Specifically, the commission found that the SHO failed to adequately analyze the BWC's contention that relator's inaction in seeking employment or pursuing rehabilitation after the commission denied his prior two PTD applications constitutes a mistake of law and that, considering such argument, relator had voluntarily abandoned the workforce rendering him ineligible for PTD compensation.

{¶ 6} Relator filed the present mandamus action. As previously indicated, the magistrate recommended that this court deny relator's request to issue the writ of mandamus. In its decision, the magistrate disagreed with relator's argument that the commission abused its discretion by exercising its continuing jurisdiction when it granted the BWC's motion for reconsideration of the SHO order. The magistrate noted that relator's hearing testimony from January 2013 relating to why relator stopped working in 2008 does not dispose of the BWC's argument that relator abandoned the workforce since the commission's rejections of his PTD applications in 2010 and 2013. As such, the magistrate concluded that the SHO's failure to address the issue raised by the BWC constitutes a clear mistake of law to support the commission's exercise of continuing jurisdiction.

## II. OBJECTIONS

{¶ 7} Relator does not separately set forth specific objections to the magistrate's decision but, instead, generally argues that the commission abused its discretion by exercising its continuing jurisdiction to grant the BWC's request for reconsideration from the SHO order awarding relator PTD compensation. Specifically, relator argues that the SHO order did not contain a clear mistake of law regarding whether relator had abandoned the workforce, implies that the magistrate incorrectly found that the SHO did not consider the BWC's voluntary abandonment arguments in reaching these conclusions, and asserts that the SHO had some evidence to support his conclusion that relator lacked the intention to voluntarily abandon the workforce.

## III. DISCUSSION

{¶ 8}   Relator raises, in essence, the same arguments made to and addressed by the magistrate.  We conclude that the magistrate correctly reasoned that based on a clear mistake of law, the commission did not abuse its discretion in exercising its continuing jurisdiction to vacate the June 4, 2015 SHO order.  The record shows that after the commission denied relator's two prior applications for PTD compensation in 2010 and 2013 based on determinations that relator could engage in sustained remunerative employment, relator did not attempt to seek or return to employment.  Contrary to relator's argument, the magistrate correctly explained that the SHO order did not address this issue but, rather, only discussed evidence relating to why relator stopped working in 2008.  Therefore, for the reasons set forth in the magistrate's analysis, we overrule relator's objections.  *State ex rel. Schottenstein Stores Corp. v. Indus. Comm.*, 10th Dist. No. 07AP-1066, 2009-Ohio-2142, ¶ 4-5.

## IV. CONCLUSION

{¶ 9}   Following review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find the magistrate properly determined the facts and applied the appropriate law.  Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law.  In accordance with the magistrate's decision, the requested writ of mandamus is denied.

*Objections overruled*;
*writ of mandamus denied.*

BROWN and BRUNNER, JJ., concur.

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Denzil Cook, | : | |
| Relator, | : | |
| v. | : | No. 15AP-1025 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Dominion Homes, Inc., | : | |
| Respondents. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on August 26, 2016

*Law Office of Stanley R. Jurus,* and *Frank A. Vitale,* for relator.

*Michael DeWine,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

## IN MANDAMUS

{¶ 10} In this original action, relator, Denzil Cook, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its August 13, 2015 order that exercised continuing jurisdiction over the June 5, 2015 order of its staff hearing officer ("SHO") that had awarded relator permanent total disability ("PTD") compensation beginning February 4, 2015, and to enter an order that reinstates the SHO's award of PTD compensation.

Findings of Fact:

{¶ 11} 1. On June 27, 1967, relator injured his lower back while employed as a "dock worker" for respondent Dominion Homes, Inc.  The industrial claim (No. 67-

37540) was initially allowed for "acute lumbar myositis." Later, the claim was additionally allowed for "depressive neurosis."

{¶ 12} 2. Following his injury, relator returned to his job as a dock worker. He continued to work there until about 1972. Following employment at Dominion Homes, Inc., relator worked several other jobs. Relator last worked in November of 2008 when he was laid off from seasonal construction work.

{¶ 13} 3. On March 30, 2009, relator filed the first of three PTD applications. Following an October 26, 2010 hearing, which was recorded and transcribed for the record, an SHO mailed an order on November 6, 2010 denying the PTD application.

{¶ 14} 4. The SHO's order states reliance upon three doctors who examined relator for the allowed physical and psychological conditions of the claim. The SHO determined:

> These physician's [sic] support the conclusion that the allowed physical and psychological conditions in this claim do not prevent the Injured Worker from engaging in certain types of sustained remunerative employment.

{¶ 15} 5. The SHO's order of October 26, 2010 concludes:

> The Hearing Officer finds that the physical limitations due to the allowed conditions would limit the Injured Worker to light-duty work. The Injured Worker is capable of performing unskilled light-duty work based upon the Injured Worker's past work experience and his current physical restrictions and psychological restrictions. The Hearing Officer finds that the Injured Worker has an ability to be a courier, delivery driver, ticket taker, and greeter. Based upon the reports of Dr. Lewin, Dr. Tosi, and Dr. Freeman, the Hearing Officer finds that the Injured Worker is capable of performing sustained remunerative employment.

{¶ 16} 6. On August 2, 2012, relator filed his second PTD application. Following a January 9, 2013 hearing which was recorded and transcribed for the record, an SHO mailed an order on March 9, 2013 denying the application. The SHO's order states in part:

> It is the finding of the Staff Hearing Officer that the Injured Worker retains the residual physical, psychological, and intellectual capacities to engage in light, sedentary sustained

remunerative employment. In finding that the Injured Worker is not permanently and totally disabled due to the allowed conditions in the claim, the Staff Hearing Officer relies upon the medical report of Dr. Donald, [sic] Tosi, Ph.D., dated 09/06/2012, Dr. Vogelstein, M.D., dated [sic] and Mr. J. Kilbane, M.Ed., dated 12/12/2012.

The Injured Worker is a 65-year-old male who completed the 10th grade at Hilliard High School. The Staff Hearing Officer finds that the Injured Worker has the ability to read, write and perform basic math. After leaving school the Injured Worker did not attend any school for vocational training, however while the Injured Worker was in the workforce he was able to learn various skills through [sic] while performing various jobs.

The records document that at the time of the injury the Injured Worker was only 20 years of age and continued to work for the next 40 years for various employers in different positions. The Injured Worker worked as [a] truck driver for 19 years, self employed truck driver for 6 years, machine operator for 7 years, and for other years he was employed in various positions such as warehouse person, stocker, and laborer.

* * *

It is the order of the Staff Hearing Officer that the Injured Worker's application for permanent and total disability benefits is denied for the reason set forth in this order.

The Injured Worker is a 65-year-old male who completed the 10th grade, has the ability to read, write and perform basic math. The Injured Worker has indicated that he does not read or write well. The Staff Hearing Officer does not find that statement to be credible. As the Injured Worker clearly has the intelligence to obtain commercial driver's license, obtain his own business as self-employed truck driver.

The Injured Worker had to enter into contractual agreements, concerning the rate of pay, terms of the agreement and complete documents for his commercial license. The Injured Worker also was employed [as] a truck driver for numerous years which would require him to complete paperwork. The Staff Hearing Officer finds that the Injured Worker has demonstrated that he has the ability to

learn new tasks, maintain and find employment as demonstrated by his 40 plus year employment history and self-employment.

* * *

The Staff Hearing Officer further notes that on 03/30/2009, the Injured Worker had applied for permanent total disability and on 10/26/2010, the IC denied the application finding that the Injured Worker could engage in sustained remunerative employment. After the finding by the IC, for the next two [sic] the Injured Worker did not attempt to seek employment or further improve his marketability to obtain employment even though the IC found that Injured Worker was not permanently and totally disabled.

{¶ 17} 7. During the January 9, 2013 hearing, on direct examination by his counsel, the following exchange occurred:

Q. And then after Capital what did you do?

A. Well, I tried to do my own trucking, but then I went to work for JF Reynolds.

Q. And your own trucking, what did you do in your own trucking? You just drove -- what kind of truck did you drive?

A. A dump truck. Doing the same thing I was doing at JF Reynolds.

Q. Okay. Then you went to work for JF Reynolds in 1989?

A. Yeah.

Q. And you did that for almost -- ten years; is that correct?

A. Almost 20 years, I think.

Q. Between the two, you mean?

A. Oh. Well, okay, yeah.

Q. Okay. And you had to stop working in 2008?

A. Yeah.

Q. Why was that?

A. I just couldn't keep up, couldn't do the work any longer. A lot of stress hold -- heavy lifting and cleaning up the beds of the dump truck that I operated.

(Jan. 9, 2013 Tr. at 6.)

{¶ 18} 8. On February 20, 2015, relator filed his third PTD application.

{¶ 19} 9. On June 5, 2015, the PTD application was heard by an SHO. The hearing was recorded and transcribed for the record. During the hearing, a staff attorney for the Ohio Bureau of Workers' Compensation ("bureau") argued that the record shows that relator voluntarily abandoned the workforce following the commission's October 26, 2010 denial of the first PTD application and the commission's January 9, 2013 denial of the second PTD application. The bureau staff attorney argued:

> So the argument is that Mr. Cook has not looked for work. He last worked in November of 2008. He has not looked for work since at least 2013 or possibly 2010. He has not engaged in any vocational, any vocational -- I said the word endeavors -- since that time. He was found capable by the Industrial Commission of returning to work in some capacity, not in his former position of employment, but in some capacity at least twice since 2010.
>
> As I indicated, there is no evidence since that time that he has engaged in any sort of job search activities or even worked in any capacity per his own indication to the IC examining physician.

(June 5, 2015 Tr. at 6-7.)

{¶ 20} 10. Following the June 5, 2015 hearing, the SHO mailed an order on June 9, 2015 granting relator's third PTD application. The SHO's order of June 5, 2015 explains:

> Permanent and total disability compensation is awarded from 02/04/2015 for the reason that the earliest supporting medical evidence for this 02/20/2015 application, is the 02/04/2015 report of Charles May, D.O.

Based upon the report of Marianne Collins, Ph.D., dated 04/12/2015, it is found that the Injured Worker is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed psychological condition(s). Therefore, pursuant to State ex rel. Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757, it is not necessary to discuss or analyze the Injured Worker's non-medical disability factors.

The Bureau of Workers' Compensation attorney argued that the Injured Worker voluntarily abandoned the work force.

The Staff Hearing Officer does not find that to be correct. There is a transcript on file of a permanent total disability hearing held on 01/09/2013. On page 6, Mr. Muldoon asks the Injured Worker why he stopped working in 2008. The Injured Worker replied, "I just couldn't keep up, couldn't do the work any longer. A lot of stress hold -- heavy lifting and cleaning up the beds of the dump truck that I operated."

The Staff Hearing Officer finds that the answer was not the answer of someone just trying to voluntarily abandon the workforce. The Staff Hearing Officer finds therefore, that there is jurisdiction to consider the merits of the application.

{¶ 21} 11. On June 23, 2015, the bureau requested reconsideration of the SHO's order of June 5, 2015. In its memorandum in support, the bureau argued:

The SHO clearly did not understand the BWC's position at the 06/09/2015 hearing. The precise argument made was that the Industrial Commission had twice previously denied the Injured Worker PTD benefits in 2010 and 2013. There were clear findings in both orders that PTD was denied because the Injured Worker was capable of performing sustained remunerative employment within physical and psychological restrictions. At the very least, an abandonment of the workforce occurred subsequent to the PTD denial in 2013 if not in 2010. Since 2010, the Injured Worker has not sought nor has he expressed an interest [in] rehabilitation services. The [Injured Worker] has not looked or sought employment elsewhere since at least 2010. The allowed physical and psychological conditions upon which the IC decided that the injured worker was capable of restricted work have not changed since the 2013 PTD denial.

* * *

The Industrial Commission has established that the injured worker was capable of returning [to] some form of sustained remunerative employment physically and psychologically in both 2010 and 2013. The evidence is clear that the injured worker has not made any effort to return to work since PTD was denied. The SHO in 2013 also noted that the injured worker failed to look for any work or become marketable since the prior denial in 2010.

Despite the overwhelming evidence of voluntary abandonment, the SHO relied upon a transcript of the injured worker's testimony from the 2013 PTD denial and indicated that the injured worker stopped working in 2008 because he couldn't do the work any longer. The Industrial Commission has already determined that the injured worker was capable of work so the injured worker's 2013 testimony is irrelevant. The correct inquiry should be: "what opportunities the injured worker has availed himself to since at least 2013?" The Injured Worker did not look for work since the initial denial in 2010 and did not look for work since the most recent denial in 2013.

{¶ 22} 12. On June 29, 2015, relator filed a memorandum in opposition to the bureau's motion for reconsideration.

{¶ 23} 13. On July 16, 2015, the three-member commission mailed an "Interlocutory Order," stating:

It is the finding of the Industrial Commission the Administrator has presented evidence of sufficient probative value to warrant adjudication of the Request for Reconsideration regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought, and a clear mistake of law of such character that remedial action would clearly follow.

Specifically, it is alleged in rejecting the Administrator's argument the Injured Worker is not entitled to permanent total disability compensation due to voluntary abandonment of the workforce, the Staff Hearing Officer erred in referencing only the circumstances under which the Injured Worker quit work in 2008. It is further alleged the Staff Hearing Officer failed to analyze the Administrator's contention the Injured Worker's inaction in seeking suitable employment or pursuing rehabilitation subsequent to the denials in 2010 and 2013 respectively of two of his prior

applications for permanent total disability constitutes a voluntary abandonment of the entire workforce, since each denial order at the time found the Injured Worker capable of sustained remunerative employment within his claim-related restrictions.

Based on these findings, the Industrial Commission directs that the Administrator's Request for Reconsideration, filed 06/23/2015, be set for hearing to determine whether the alleged clear mistakes of fact and law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.

In the interest of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issue(s). The Industrial Commission will thereafter issue an order on the matter of continuing jurisdiction under R.C. 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issue(s).

{¶ 24} 14. Following an August 13, 2015 hearing, the three-member commission mailed an order that exercises continuing jurisdiction over the SHO's order of June 5, 2015 (mailed June 9, 2015) and vacates the SHO's order. Then the commission determined that relator had voluntarily abandoned the workforce, and on that basis, denied the PTD application. The commission's order more fully explains:

[I]t is the decision of the Industrial Commission the Administrator has met his burden of proving the Staff Hearing Officer order, issued 06/09/2015, contains a clear mistake of law of such character that remedial action would clearly follow. Specifically, the Staff Hearing Officer failed to adequately analyze the Administrator's contention the Injured Worker's inaction in seeking suitable employment or pursuing rehabilitation subsequent to the denials of the Injured Worker's two prior applications for permanent total disability, in 2010 and 2013 respectively, constitutes a voluntary abandonment of the entire workforce, since each denial order at the time found the Injured Worker capable of sustained remunerative employment within the Injured Worker's claim-related restrictions. Therefore, the Industrial Commission exercises continuing jurisdiction. * * *

It is the order of the Commission the order of the Staff Hearing Officer, issued 06/09/2015, is vacated, and the IC-2, Application for Compensation for Permanent Total Disability, filed 02/20/2015, is denied. In accordance with Ohio Adm.Code 4121-3-34(D)(1)(d), the Commission finds the Injured Worker is not permanently and totally disabled because the Injured Worker voluntarily removed himself from the entire work force.

Permanent total disability compensation was previously denied by Staff Hearing Officer orders, issued 11/06/2010 and 03/09/2013, respectively. Both orders were based upon the determination the allowed conditions were not permanently and totally disabling. The latter order specifically commented upon the Injured Worker's lack of vocational rehabilitation and job search, stating, "[O]n 10/26/2010, the IC denied the application finding that the Injured Worker could engage in sustained remunerative employment. After the finding by the IC, for the next two (sic) the Injured Worker did not attempt to seek employment or further improve his marketability to obtain employment even though the IC found that Injured Worker was not permanently and totally disabled."

The Injured Worker last worked in 2008. The Injured Worker has not participated in a vocational rehabilitation program and he has not sought suitable employment consistent with the two prior orders, determining the Injured Worker retained the physical, psychological, and vocational capacity for sustained remunerative employment. The Commission finds the Injured Worker has abandoned the entire work force as evidenced by the Injured Worker's inaction to seek work or vocational rehabilitation. State ex rel. Kelsey Hayes Co. v. Grashel, 138 Ohio St.3d 297, 2013-Ohio-4949, 6 N.E.3d 1128. As a result of the Injured Worker's voluntary abandonment of the entire work force, the Injured Worker is not eligible for permanent total disability compensation. Baker Material Handling Corp. v. Indus. Comm., 69 Ohio St.3d 202, 631 N.E.2d 138, 1994-Ohio-437.

{¶ 25} 15. On November 9, 2015, relator, Denzil Cook, filed this mandamus action.

<u>Conclusions of Law</u>:

{¶ 26} The issue is whether the commission abused its discretion when it exercised its continuing jurisdiction over the June 5, 2015 order of the SHO that had awarded relator PTD compensation. Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

## Continuing Jurisdiction

{¶ 27} Continuing jurisdiction is not unlimited. Its prerequisites are (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal. *State ex rel. Royal v. Indus. Comm.*, 95 Ohio St.3d 97 (2002).

{¶ 28} The presence of one of these prerequisites must be clearly articulated in any commission order seeking to exercise reconsideration jurisdiction, i.e., continuing jurisdiction. *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 15. This means that the prerequisite must be both identified and explained. *Id.*

{¶ 29} In *Royal,* the commission had awarded Gerald Royal PTD compensation. Thereafter, the employer timely sought reconsideration. After initially denying the motion, the commission granted reconsideration. Pertinent here is the court's discussion of mistake of fact:

> The reliance on "mistake of fact" is equally untenable. When the initial PTD order and disputed reports are read closely, the perceived error is not so much mistake as a difference in evidentiary interpretation. The report of vocational consultant Roger Livingston is confusing and can be interpreted several ways. The commission and appellant-employer took the narrow interpretation, looking exclusively at the academic and vocational conclusions. The SHO, on the other hand, read these things in conjunction with the unfavorable medical prognosis that Livingston repeatedly stressed, and concluded that regardless of an affirmative vocational profile, claimant could not overcome the obstacles imposed by the loss of his right arm.
>
> This is significant because a legitimate disagreement as to the evidentiary interpretation does not mean that one of the

> interpretations is wrong. Thus, any assertion of a clear error
> of fact is questionable.

*Id.* at 100.

## Workforce Abandonment

{¶ 30} "An employee who retires prior to becoming permanently and totally disabled is precluded from eligibility for permanent total disability compensation only if the retirement is voluntary and constitutes an abandonment of the entire job market." *State ex rel. Baker Material Handling Corp. v. Indus. Comm.*, 69 Ohio St.3d 202 (1994), paragraph two of the syllabus.

{¶ 31} Workforce abandonment can also bar temporary total disability compensation. *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245. *State ex rel. Corman v. Allied Holdings, Inc.,* 132 Ohio St.3d 202, 2012-Ohio-2579.

{¶ 32} A failure to seek other work or pursue vocational rehabilitation after a commission adjudication that a claimant is capable of sustained remunerative employment can support a finding that, by his own inaction, the claimant has voluntarily abandoned the workforce. *State ex rel. Roxbury v. Indus. Comm.,* 138 Ohio St.3d 91, 2014-Ohio-84; *State ex rel. Krogman v. B & B Ents. Napco Flooring, LLC,* 10th Dist. No. 14AP-477, 2015-Ohio-1512.

## Analysis

{¶ 33} Relator has filed three successive PTD applications. In 2010 and 2013, the commission denied the first and second applications. In each case, the commission determined that, based on the medical evidence and consideration of the non-medical factors, relator is able to perform sustained remunerative employment. However, relator did not pursue employment after the 2010 and 2013 commission adjudications.

{¶ 34} When relator filed his third PTD application in February 2015, the bureau clearly had an argument for a finding of a voluntary workforce abandonment based upon relator's inaction following denial of his first two applications.

{¶ 35} As earlier noted, the transcript of the June 5, 2015 hearing before the SHO undisputedly shows that the bureau argued for a denial of the application based on an

alleged voluntary workforce abandonment. Notwithstanding the bureau's argument and its presentation of its position, the SHO's order of June 5, 2015 fails to even mention the bureau's argument. Rather, the SHO's order of June 5, 2015 is focused on a portion of relator's recorded testimony at the January 9, 2013 hearing of his second PTD application. In awarding PTD compensation, the SHO's order of June 5, 2015 relies on relator's testimony that he stopped working in 2008 because he could no longer do the work at which he was last employed.

{¶ 36} Even if relator's January 9, 2013 hearing testimony is accepted, that cannot end the SHO's inquiry because the bureau's argument for a workforce abandonment is not at odds or inconsistent with relator's testimony that he was no longer able to perform the work that he was doing in 2008. That is, relator's hearing testimony does not, in any way, undermine the bureau's argument. Thus, relator cannot successfully argue here that the SHO's acceptance of relator's January 9, 2013 hearing testimony can be viewed as an implicit rejection of the bureau's argument. Clearly, the SHO's order of January 9, 2013 completely fails to address an issue that was clearly put before the SHO. The SHO's failure to address the issue constitutes a clear mistake of law. *State ex rel. Gen. Am. Transp. Corp. v. Indus. Comm.*, 49 Ohio St.3d 91 (1990).

{¶ 37} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

> Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).