[Cite as *State ex rel. Patterson v. Indus. Comm.*, 2017-Ohio-9195.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Leona Patterson, | : | |
| Relator, | : | |
| v. | : | No. 16AP-786 |
| Industrial Commission of Ohio and Greater Cleveland Regional Transit Authority, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

## D E C I S I O N

## Rendered on December 21, 2017

**On brief:** *N.R.S. Co. L.P.A., Jerald A. Schneiberg,* and *Corey J. Kuzma,* for relator.

**On brief:** *Michael DeWine,* Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio.

**On brief:** *Anna Hlavacs,* for respondent Greater Cleveland Regional Transit Authority.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

SADLER, J.

{¶ 1} Relator, Leona Patterson, brings this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its June 23, 2016 order denying relator's fourth application for permanent total disability ("PTD") compensation.

{¶ 2}   The record shows relator sustained a work-related injury while working as a bus driver in 1992.  After she returned to work as a bus driver, relator sustained serious injuries when several juveniles assaulted her on April 2, 2000.  Relator did not return to work following the April 2, 2000 injury.  Relator filed her first PTD application in 2012. On June 10, 2004, a staff hearing officer ("SHO") determined "claimant has failed to prove by a preponderance of competent medical evidence that the injuries the claimant sustained during her work career is preventing her from sustained and gainful employment.   [T]he medical evidence * * * indicates the claimant could perform sedentary employment."  (Emphasis omitted.)  (Stipulated Record at 143-44.)  On May 12, 2005, an SHO denied relator's second PTD application finding "[h]er disability is partial, not total.   Her allowed injuries do not prevent her from engaging in sustained remunerative employment."  (Stipulated Record at 156.)  On November 27, 2012, an SHO denied relator's third PTD application on finding relator was not "physically or psychologically prevent[ed] * * * from engaging in sustained remunerative employment * * * in the sedentary to light duty levels."  (Stipulated Record at 167.)  On March 3, 2014, following a vocational assessment, an SHO issued an order finding "the Injured Worker's request for entrance into a rehabilitation vocational plan is denied as the Injured Worker is not a feasible candidate."[1]  (Stipulated Record at 133.)

{¶ 3}   On September 9, 2016, the three-member commission denied relator's fourth application for PTD.   In denying relator's fourth application for PTD, the commission found "the Injured Worker is ineligible to receive [PTD] compensation for the reason her lack of effort to pursue suitable employment since at least 6/23/04, the date the order was issued denying the first of her three prior [PTD] Applications * * *, demonstrating an abandonment of the work force on that date."  (Stipulated Record at 22.)  Relator subsequently filed the instant action seeking a writ of mandamus.

{¶ 4}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who rendered a decision and recommendation including findings of fact and conclusions of law, which is appended hereto.   The magistrate determined the commission did not abuse its discretion in

---

[1] The magistrate found "the SHO's order of March 3, 2014 was not administratively appealed."  (Mag.'s Decision at 7.)

denying relator's fourth application for PTD benefits because evidence in the record supported the commission's finding that relator abandoned the workforce as early as June 2004. Accordingly, the magistrate recommended we deny the requested writ of mandamus.

{¶ 5} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986).

{¶ 6} Relator does not separately set forth an objection to the magistrate's decision. However, the crux of relator's claim is the commission failed to consider relator's allowed psychological condition in making the determination that she abandoned the workforce. The magistrate rejected relator's argument because relator had never previously contended the commission failed to consider her allowed psychological condition in denying her three prior PTD applications and because the commission grounded its finding of abandonment on relator's failure to rejoin the workforce after the denial of each of those prior applications. We agree with the logic employed by the magistrate.

{¶ 7} In this case, there have been three prior determinations by the commission that relator is capable of sustained remunerative employment at the light duty or sedentary level. As the magistrate noted, relator has never contended the commission failed to consider relator's allowed psychological condition in denying any of relator's three prior PTD applications. Moreover, our review of the three prior determinations reveals the commission considered relator's allowed psychological condition in denying PTD. There is no dispute relator failed to return to work after any of those prior determinations.

{¶ 8} Relator next contends the magistrate's decision is at odds with the decision of this court in *State ex rel. Young v. Butler Cty. Personnel Office*, 10th Dist. No. 15AP-1035, 2016-Ohio-8341. In *Young*, the commission denied relator's PTD application on

finding relator had voluntarily abandoned the workforce. Relator filed a mandamus action in this court arguing the commission abused its discretion in ruling relator abandoned the workforce when that issue had not been raised by the employer. The magistrate disagreed and recommended we deny the requested writ. Relator objected to the magistrate's decision arguing the commission abused its discretion in finding relator voluntarily abandoned the workforce where the evidence showed relator was not medically capable of participating in rehabilitation services. In rejecting relator's argument, this court stated "if the claimant is not medically capable of participating in vocational rehabilitation services *or working*, * * * abandonment of the workforce is not voluntary." (Emphasis added.) *Id.* at ¶ 6.

{¶ 9} In this case, the commission's prior three orders denying PTD contained a finding that relator was currently capable of sustained remunerative employment in the light duty or sedentary level. The commission's findings regarding current employability included consideration of relator's allowed psychological condition and were not predicated on relator's participation in vocational rehabilitation services. Because relator was medically capable of working as early as June 2004, without the benefit of vocational training, nothing in our decision in *Young* precluded the commission from finding relator voluntarily abandoned the workforce as early as June 2004. Contrary to relator's assertion, *Young* actually supports the magistrate's decision.

{¶ 10} To the extent relator contends the SHO's March 3, 2014 feasibility determination precluded the commission from subsequently finding relator abandoned the workforce in 2004, we note Ohio Adm.Code 4121-3-34(D)(1)(d) sets the test for voluntary abandonment as follows:

> If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of *the injured worker's medical condition at or near the time of removal/retirement.*

(Emphasis added.)

{¶ 11} Because the commission's determination that relator voluntarily removed herself from the workforce in 2004 required consideration of "the injured worker's medical condition at or near the time of removal/retirement," the commission's 2014 feasibility determination is irrelevant to the question of abandonment. Nevertheless, it is evident from the commission's March 3, 2014 order and the evidence on which the commission relied that the commission fully considered relator's allowed psychological condition in making the determination relator was not a feasible candidate for vocational rehabilitation services. As the magistrate noted, the commission relied on the vocational rehabilitation assessment submitted by vocational specialist Amy Corrigan in making the determination regarding relator's eligibility for vocational rehabilitation services. The magistrate determined Corrigan's report provided some evidence on which the commission could rely in rejecting relator's assertion she wants to re-enter the workforce. We agree with the magistrate.

{¶ 12} Following an independent review of the magistrate's decision and the objections filed by respondent, we find the magistrate has determined the pertinent facts and properly applied the relevant law. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusion of law contained therein. For the reasons set forth in the magistrate's decision and those expressed herein, relator's objection is overruled, and relator's request for a writ of mandamus is denied.

*Objection overruled*;
*writ of mandamus denied.*

KLATT and BRUNNER, JJ., concur.

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Leona Patterson, | : | |
| Relator, | : | |
| v. | : | No. 16AP-786 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Greater Cleveland Regional Transit Authority, | : | |
| | : | |
| Respondents. | : | |
| | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on July 7, 2017

*Nager, Romaine & Schneiberg, Co. LPA, Jerald A. Schneiberg,* and *Corey J. Kuzma,* for relator.

*Michael DeWine,* Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio.

*Anna Hlavacs,* for respondent Greater Cleveland Regional Transit Authority.

## IN MANDAMUS

{¶ 13} In this original action, relator, Leona Patterson, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its June 23, 2016 order denying relator's fourth application for permanent total disability ("PTD") compensation on grounds that relator voluntarily abandoned the

workforce and is, thus, ineligible for compensation, and to enter an order that adjudicates the application absent a finding of voluntary workforce abandonment.

Findings of Fact:

{¶ 14} 1. Relator has two industrial claims arising from her employment as a bus driver for respondent Greater Cleveland Regional Transit Authority ("GCRTA"), a self-insured employer under Ohio's workers' compensation laws.

{¶ 15} 2. The first injury occurred March 12, 1992. The industrial claim (No. 92-46564) is allowed for:

> Trunk injury; contusion right shoulder; right shoulder/upper arm injury; sprain right shoulder/arm; right hip and thigh injury; sprain right hip and thigh; lumbosacral sprain.

{¶ 16} 3. The second injury occurred April 2, 2000. The industrial claim (No. 00-382124) is allowed for:

> Traumatic glaucoma/cataract - left eye; depressed fracture of the nasal bone; post-traumatic stress disorder; major depression; anxiety disorder.

{¶ 17} 4. On January 2, 2003, relator filed her first PTD application.

{¶ 18} 5. Following a June 10, 2004 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order of June 10, 2004 explains:

> [T]he claimant has failed to prove by a <u>preponderance</u> of <u>competent medical</u> evidence that the injuries the claimant sustained during her work career is preventing her from sustained and gainful employment.
>
> * * *
>
> [T]he medical evidence * * * indicates the claimant could perform sedentary employment. Her daily activities also suggest claimant could perform sedentary work and could perform the booth attendant job previously offered by the employer. * * * [T]he claimant has strong vocational assets in her young age and her education which includes a GED and training in cosmetology and word processing.
>
> These vocational factors are sufficient for the claimant to perform sustained and gainful work at the sedentary level.

(Emphasis sic.)

{¶ 19} 6. On September 3, 2004, relator filed her second PTD application.

{¶ 20} 7. Following a May 12, 2005 hearing, an SHO issued an order denying the second PTD application. The SHO's order of May 12, 2005 explains:

> The medical evidence indicates that the injured worker cannot perform the bus driver job that she had before her injury in 2000 but that she can perform work at the 'light' strength level, in a job where she did not need perfect visual acuity or a complete field of vision, and where she would not be around crowds and juveniles. She has a high school education, with additional training in word processing, is capable of reading and writing as well as learning new skills and is young enough for vocational training. * * * Her disability is partial, not total. Her allowed injuries do not prevent her from engaging in sustained remunerative employment.

{¶ 21} 8. On February 9, 2012, relator filed her third PTD application.

{¶ 22} 9. Following a November 27, 2012 hearing, an SHO issued an order denying the third PTD application. The SHO's order of November 27, 2012 explains:

> The Staff Hearing Officer find that the residual functional capacities as set forth above in the medical reports would not physically and psychologically prevent the Injured Worker from engaging in sustained remunerative employment consistent with various job titles in the sedentary and light duty levels.
>
> * * *
>
> In conclusion, the Staff Hearing Officer understands the Injured Worker sustained a serious eye injury and has allowed medical restrictions including physical and psychological conditions that are related to this [sic] industrial injuries. The Staff Hearing Officer also understands that the Injured Worker last worked on the date of injury in this claim.
>
> However, the Staff Hearing Officer finds that the medical records from the doctors noted above do indicate that the Injured Worker is capable of light duty and/or sedentary level work. A review of the vocational factors indicate that

> neither age, education nor employment are a barrier to obtaining and maintaining sustained remunerative employment.
>
> Furthermore, the Injured Worker's lack of vocational rehabilitation services has not gone unscrutinized. Although the prior refusal to participate is not a bar to permanent total disability compensation, it will be considered. To date, the Injured Worker has not attempted any vocational rehabilitation services. Therefore, based on a totality of circumstances noted above, the Injured Worker is not permanently and totally disabled.

{¶ 23} 10. The record contains a 12-page document captioned "Vocational Rehabilitation Assessment Report."  The last page of the document indicates the document was prepared by Amy L. Corrigan, M.Ed., CRC, a vocational evaluation specialist.  Corrigan is an employee of VocWorks.  On the first page of the document, Corrigan is listed as the "Evaluator."

{¶ 24} The document indicates that relator was referred for a "Vocational Rehabilitation Assessment on January 29, 2014.  The first page of the document states that the dates of service are February 10 to February 24, 2014.

{¶ 25} On the last two pages of the document, Corrigan concludes:

> The feasibility factors that are not in Ms. Patterson's favor are listed as follows:
>
> - *Motivation*
>   Ms. Patterson does not present as particularly motivated to participate in services or to return to competitive employment, which is apparent from her overall interactions and behaviors during this assessment. Ms. Patterson was not able to finish any of the vocational requests without assistance or prompts, including (1) completing the vocational questionnaire beforehand (she let her daughter fill out the form) (2) finishing the achievement tests during the evaluation (she quit early despite accommodations for time, lighting, use of a magnifier, and verbal support/direction) and (3) delaying the completion of the take-home tests with interim phone messages related to her vision limitations (she focused on her perceived inability to independently complete

the tests without utilizing the resources/strategies discussed when the assignment was given, namely working at her own pace or enlisting her daughter's help.)

- *Past Participation*
  Ms. Patterson's past participation in vocational/medical services shows a well-documented pattern of her uncooperative demeanor and actions. During this evaluation, she was not as disagreeable as she was just seemingly disinclined or disconnected. However, past behavior patterns suggest that Ms. Patterson would approach vocational rehabilitation services in the same or similar manner (i.e., reluctantly, passively or actively resistant to direction and competitive expectations.)

- *Medical Stability*
  Ms. Patterson's physical/psychological stability remains an issue in terms of her readiness and release to work. While some of the referral information reflects recommendations for her re-employment with restrictions, the most recent case note from the attending psychologist indicates "she is to[o] depressed and anxious to return to work" and the Physician's Report of Work Ability report from Aaron Billowitz, M.D. indicates she is temporarily not released to work including the former position of employment. Observations noted from this assessment indicate Ms. Patterson is at least inconsistent in her physical/mental demeanor (i.e., on time and prepared, but unable to finish the assessment; accepts daughter's help to fill out questionnaire, but does not seek help to finish the take-home tests; unable to focus on tests in the sunny library room and bumps into the wall/door jamb, but able to drive herself to/from the library location; etc.)

- *Employment Objectives*
  Ms. Patterson has a few personal or attitude barriers that suggest a negative vocational outcome or would at least impact the effectiveness of services. Her return-to-work objectives or parameters are either too vague or unreasonable. Ms. Patterson cannot define any job goals for direct placement or name jobs that

appeal to her in an ideal or hopeful way, and she has a number of restrictions in terms of prospective work tasks or environments (i.e., no driving, no general public or people, no children, no pressing clothes, no outdoors, no visual tasks/paperwork, no morning schedule, etc.) She is unwilling to commute more than a few miles to a new job, and she will not utilize public transportation. Ms. Patterson shares a car with a friend, suggesting she would have to coordinate a work schedule with this person or get a ride through friends/family. And, she wants to earn the same/similar high wages as the position she held 14 years ago.

**Comments/Conclusions**

Ms. Patterson is not a feasible candidate for the Bureau of Workers' Compensation Vocational Rehabilitation Program at this time, because it is unlikely she will return to competitive employment as a result. Simply put, the identified negative factors outweigh the positive factors observed during this assessment.

(Emphasis sic.)

{¶ 26} 11. On March 3, 2014, an SHO heard the matter of relator's eligibility and feasibility for vocational services. Following the hearing, the SHO issued an order denying relator entrance into a vocational rehabilitation plan. The SHO's order of March 3, 2014 explains:

The Hearing Officer notes that authorization was granted by a District Hearing Officer on 12/23/2013 for a referral to vocational rehabilitation for a determination of eligibility/feasibility. The Self-Insuring Employer conducted an evaluation from 02/10/2014 through 02/24/2014. The Hearing Officer finds that the result of that evaluation found the Injured Worker not feasible to participate in a vocational rehabilitation plan.

In accordance with Ohio Adm.Code 4123-18-03(H)(1) "Feasibility for vocational rehabilitation services means there is a reasonable probability that the Injured Worker will benefit [from] services at this time and return to work as a result of the services." If it is determined that it is likely that the Injured Worker will not return to work in spite of the

provisions of such services, then the Injured Worker is not feasible.

The findings of the vocational assessment took into consideration when determinating [sic] whether or not the Injured Worker was a feasible candidate included that the Injured Worker does not present particularly motivated to participate or to return to competitive employment. Further, the Injured Worker's past participation indicated that the Injured Worker was disinclined or disconnected. The Injured Worker's current medical [conditions] resulting from the allowed conditions of this claim and other medical conditions not a part of this claim (i.e. bilateral knees, back) pose a significant barrier from returning to work. Other factors taken into consideration included the Injured Worker's gap in time out of the work force, sedentary to light work restrictions and transportation limitations.

The Hearing Officer notes that the findings of the Self-Insuring Employer's assessment are consistent with the documentation contained in the file submitted on behalf of the Injured Worker. Dr. Billowitz notes on 09/16/2013 that the Injured Worker initiates very little and does not express notable goals or plans. Dr. Rozel notes on 02/17/2014 that the process of a vocational assessment was just a formality. Finally, Mark Anderson concluded in his vocational assessment that the Injured Worker has no return to work potential and is not a feasible candidate for vocational rehabilitation.

Therefore, the Hearing Officer finds that the Injured Worker's request for entrance into a vocational rehabilitation plan is denied as the Injured Worker is not a feasible candidate.

{¶ 27} 12. Apparently, the SHO's order of March 3, 2014 was not administratively appealed.

{¶ 28} 13. On January 6, 2015, relator filed her fourth PTD application which is at issue in this mandamus action.

{¶ 29} 14. On March 2, 2015, at the commission's request, relator was examined by Elizabeth Mease, M.D. Dr. Mease practices internal medicine. Dr. Mease examined

only for the allowed physical conditions of the two industrial claims. In her six-page narrative report, Dr. Mease opines:

> **Impression**
>
> Ms. Leona Patterson is a 55 year old woman who was injured on 4-02-2000 when she was assaulted by several juveniles and she sustained a traumatic injury to her left eye and nose. This claim is allowed for glaucoma with ocular trauma/cataract left eye, 100% vision loss left eye, nasal bone fracture, closed, post traumatic stress disorder and major depression; anxiety disorder. She has had other industrial injuries involving her cervical spine, shoulders, lumbar spine, right hip and both knees. She has been treated conservatively for those injuries. Current findings reveal visual acuity of 20/200 left eye and wide irregular iris (consistent with prior iridectomy left eye). She was observed to have normal range of motion of the cervical spine and lumbar spine. She has full passive range of motion of both shoulders. Right hip and both knees ranges of motion are within normal limits. There is a discrepancy between demonstrated ranges of motion and observed ranges of motion. Symptom magnification behavior is present.
>
> **In your opinion is the IW permanently and totally disabled from sustained remunerative employment due to the allowed physical conditions in the claim? Please explain.**
>
> No. Solely for the allowed physical conditions in her claims, she is not permanently and totally disabled from sustained remunerative employment. She has essentially monocular vision right eye and she does drive. She has no objective evidence of functional deficits to other body parts including cervical spine, both shoulders, lumbar spine, hips and both knees. She is able to perform light physical demand activities. She is able to perform activities that allow for only monocular vision. Vocational assessments indicate that there are jobs available within her functional capabilities.

(Emphasis sic.)

{¶ 30} 15. On February 16, 2015, at the commission's request, relator was examined by clinical psychologist Robert G. Kaplan, Ph.D. Dr. Kaplan examined only

for the psychological conditions allowed in the industrial claim regarding the April 2, 2000 injury.  In his 23-page narrative report, dated June 18, 2015, Dr. Kaplan opines:

> With reasonable psychological certainty, it can be stated that:
>
> [One] In addition to having bona fide symptoms of anxiety and depression, Ms. Leona C. Patterson is exaggerating, fabricating, and malingering psychological symptoms, including cognitive impairment, and is exaggerating pain and physical limitations that are caused by the allowed conditions. Furthermore, she is not a reliable reporter of her history, or the causes of her psychological symptoms and impairments.
>
> [Two] Ms. Leona C. Patterson is not Permanently and Totally Disabled by the allowed psychological conditions of an industrial injury that occurred on 4/2/2000.

{¶ 31} 16.  On July 23, 2015, at the commission's request, relator was examined by licensed clinical psychologist Richard G. Litwin, Ph.D.  In his seven-page narrative report, Dr. Litwin opined:

> In the examiner's opinion, Ms. Patterson has reached MMI status for her psychological allowances. Despite years of treatment, she remains depressed, paranoid and chronically anxious. She does not report having any strong coping skills that have been incorporated into her daily life. She does not report that medications have made a significant impact on her psychological symptoms.
>
> ***The overall percentage of permanent impairment arising from her allowed psychological diagnoses is considered Class 3, Moderate Impairment, resulting in 28% whole person impairment.*** Findings are based upon this current evaluation, and taking an average of the four areas of functional impairment noted above, a review of the psychological records, and with reference to the AMA Guides Second and Fifth edition and the Industrial Commission Medical Examination manual.
>
> See the completed Occupational Activity Assessment Form for further discussion setting forth mental limitations resulting from the allowed psychological condition.

(Emphasis sic.)

{¶ 32} 17. On August 5, 2015, Dr. Litwin completed a form captioned "Occupational Activity Assessment[,] Mental & Behavioral Examination." On the form, Dr. Litwin indicated by his mark "[t]his Injured Worker is incapable of work."

{¶ 33} 18. On August 12, 2015, at the commission's request, relator was examined by Jess G. Bond, M.D. Dr. Bond examined only for the allowed physical conditions of the two industrial claims. In his four-page narrative report, Dr. Bond opines:

> Based on review of the records provided and the findings of this examination, the Injured Worker has no work limitations. The Physical Strength Rating form has been completed (please see enclosed form). Disability factors such as age, education, and work/training/experience were not taken into consideration.

{¶ 34} 19. On August 12, 2015, Dr. Bond completed a Physical Strength Rating form. On the form, Dr. Bond indicated by his mark "[t]his Injured Worker has no work limitations."

{¶ 35} 20. On September 15, 2015, at the commission's request, relator was examined by ophthalmologist Jeffrey T. Starkey, M.D. In his two-page narrative report, dated December 7, 2015, Dr. Starkey opines:

> There is no doubt that Mrs. Patterson has suffered significant trauma to her left eye with resultant loss of both central and peripheral from secondary glaucoma, lack of iris, and her corneal scleral scar. However, I can not account for her said loss of vision in her right eye. The only significant pathology that she possesses on the right is a mild cataract, which in no way could explain her 20/200 vision in my office. This is also not consistent with her ability to obtain a drivers license to operate a motor vehicle in the state of Ohio. It therefor becomes obvious to me that her vision loss in the right eye is non-physiologic, and I expect that some of her visual loss in the left eye is also non-physiologic. I am therefor not comfortable with estimating her level of visual impairment and subsequent whole person impairment. I would suggest that the Ohio Industrial Commission obtain the opinion of a neuro-ophthalmologist. Said specialist more frequently evaluates patients with non-physiologic visual loss

and would therefor be able to generate a more accurate report.

{¶ 36} 21. The record contains a document captioned "Vocational Rehabilitation Assessment Addendum."  The document indicates that it was prepared by Amy Rumrill, M.Ed, CRC, who is a "Vocational Specialist."  Rumrill is employed by VocWorks.  The Rumrill addendum lists the dates of service as February 29 to March 10, 2016.  In her three-page report, Rumrill concludes:

> If all other factors such as Ms. Patterson's motivation/lack of interest to work, remain the same as in the 2014 report, Ms. Patterson is not a feasible candidate for the Bureau of Workers' Compensation Vocational Rehabilitation Program at this time.  Based on the 2015 medical/psychological reports and the previous reports reviewed for the original 2014 employability assessment report, the majority of the referral information indicate[s], that even though Ms. Patterson is found to be capable of performing work physically and psychologically, based on her lack of motivation/interest (as indicated by Dr. Litwin on 7/23/15 and Dr. Rozel on 2/7/14), lack of past participation in vocational/rehabilitation services, and other barriers noted in the original report of 2014, it is the opinion of this evaluator that it is unlikely she will return to competitive employment as a result of vocational rehabilitation services.

{¶ 37} 22. Following a March 14, 2016 hearing, an SHO mailed an order on April 12, 2016 that denied the fourth PTD application.

{¶ 38} 23. On April 29, 2016, relator requested commission reconsideration of the SHO's order of March 14, 2016.

{¶ 39} 24. On June 2, 2016, the three-member commission mailed an interlocutory order that identifies grounds for the potential exercise of continuing jurisdiction.

{¶ 40} 25. Following a June 23, 2016 hearing, the three-member commission mailed an order on September 9, 2016, that finds grounds for the exercise of continuing jurisdiction and determines that relator voluntarily abandoned the workforce and, thus, is ineligible for PTD compensation.  The commission did not reach the merits of the

PTD application. The commission's order vacates the SHO's order of March 14, 2016 (mailed April 12, 2016). The commission's order of June 23, 2016 explains:

> It is the decision of the Commission to deny the Injured Worker's IC-2 Application for Compensation for Permanent Total Disability, filed 01/06/2015. The Commission finds the Injured Worker is ineligible to receive permanent total disability compensation for the reason her lack of effort to pursue suitable employment since at least 06/23/2004, the date the order was issued denying the first of her three prior IC-2 Applications on file, demonstrating an abandonment of the work force as of that date.
>
> The Commission finds the first of the Injured Worker's three prior IC-2 Applications, filed 01/02/2003, was denied by order of the Staff Hearing Officer, issued 06/23/2004. In his 06/23/2004 order, the Staff Hearing Officer denied the permanent total disability application for alternative reasons, one of which was the Injured Worker was capable of sedentary work, based on persuasive medical evidence on file so indicating. The Staff Hearing Officer also found the Injured Worker's strong vocational assets, i.e., her age of 47 at the time, her GED, and her training in cosmetology and word processing, were sufficient for her to perform sustained remunerative employment at the sedentary level. The Commission finds the Injured Worker made no effort to return to the work force subsequent to the issuance of the 06/23/2004 order, despite having the capacity to do so.
>
> The Commission finds the Injured Worker's second IC-2 Application, filed 09/03/2004, was denied by order of the Staff Hearing Officer, issued 05/19/2005. In his 05/19/2005 order, the Staff Hearing Officer found the persuasive medical and vocational evidence on file supported a finding the Injured Worker had the capacity to perform work at the light level, in positions not requiring perfect visual acuity or a complete field of vision and not requiring she be around crowds or juveniles. The Staff Hearing Officer further found the Injured Worker's high school education and additional training in word processing were assets enabling her to perform work as described. The Commission finds the Injured Worker made no effort to return to the work force subsequent to the issuance of the 05/19/2005 order, despite her capacity to do so.

The Commission finds the Injured Worker's third IC-2 Application, filed 02/09/2012, was denied by order of the Staff Hearing Officer, issued 12/08/2012. In his 12/08/2012 order, the Staff Hearing Officer found the persuasive medical evidence on file supported a finding the Injured Worker had the capacity to perform sedentary and light work activity not requiring use of the right hand above the level of her head, in positions not requiring good vision in both eyes and in a structured environment with low stress or a quiet environment away from a lot of people, particularly young people. The Staff Hearing Officer found the Injured Worker's GED and additional training in cosmetology and word processing were positive vocational factors, further noting to date the Injured Worker had not attempted any vocational rehabilitation services. The Commission finds the Injured Worker made no job-search effort subsequent to the issuance of the 12/08/2012 order to find employment consistent with the claim-related restrictions identified in the order, despite her capacity to do so.

The Commission finds the Injured Worker participated in a vocational-rehabilitation assessment in February 2014, which led to a finding the Injured Worker was not a feasible candidate for vocational rehabilitation. Specifically, in her vocational-assessment report filed 03/03/2014, Amy Corrigan, M.Ed., CRC, concluded the Injured Worker was not feasible for rehabilitation services, citing in part her lack of motivation to return to work, with her past participation in vocational/medical services demonstrating her tendency to approach the subject reluctantly, at times being actively resistant. In addition, Ms. Corrigan cited the Injured Worker's inconsistent physical/mental demeanor and her vague and/or unreasonable return-to-work objectives. When the issue of the Injured Worker's feasibility for participation in a vocational-rehabilitation plan came to hearing, the Staff Hearing Officer, in her order issued 03/07/2014, found the Injured Worker was not feasible for rehabilitation services, echoing many of the findings in Ms. Corrigan's vocational-assessment report, particularly with regard to motivation issues and the reluctance to participate in rehabilitation the Injured Worker had exhibited in the past.

In State ex rel. Black v. Indus. Comm. 137 Ohio St.3d 75, 2013-Ohio-4550, 997 N.E.2d 536, ¶ 14, the Court held "[a] claimant's eligibility for permanent total disability compensation may be affected if the claimant has voluntarily

retired or abandoned the job market for reasons not related to the industrial injury." (Emphasis added.) In State ex rel. Kelsey Hayes Co. v. Grashel, 138 Ohio St.3d 297, 2013-Ohio-4959, 6 N.E.3d 1128, the Court addressed the Injured Worker's request for permanent total disability compensation where the evidence demonstrated he had stopped working in 2004 for reasons unrelated to the allowed conditions. The Court found the Injured Worker to be ineligible for permanent total disability compensation because he "was not disabled by his allowed conditions when he stopped working . . . . Thus, he voluntarily abandoned the workforce at that time and eventually the entire job market." *Id.* at ¶ 20. In so holding, the Court found the Injured Worker was capable of working with restrictions at the time he last worked in 2004.

As indicated above, the Commission finds since at least 06/23/2004, the Injured Worker has not sought to re-enter the work force in a capacity consistent with her claim-related functional limitations, nor has she exhibited motivation to benefit from vocational-rehabilitation services since such date. Therefore, consistent with Black and Kelsey Hayes, the Commission finds the Injured Worker voluntarily abandoned the work force at least as of 06/23/2004, thereby precluding her eligibility for permanent total disability compensation. Accordingly, the Commission denies the Injured Worker's IC-2 Application filed 01/06/2015.

{¶ 41} 26. On November 17, 2016, relator, Leona Patterson, filed this mandamus action.

Conclusions of Law:

{¶ 42} The main issue is whether the commission abused its discretion in determining that relator voluntarily abandoned the workforce and is thus ineligible for PTD compensation. According to relator, the commission failed to consider all the allowed conditions, particularly the psychological conditions in the year 2000 claim, when it accepted the report of Amy Corrigan in finding that relator lacks motivation to return to work and is thus not feasible for vocational rehabilitation services. Relator asserts that it was the allowed psychological conditions that caused her to fail to obtain entrance into a vocational rehabilitation plan.

{¶ 43} Finding that the commission did not abuse its discretion in determining that relator has voluntarily abandoned the workforce and is thus ineligible for PTD compensation, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. Moreover, the commission did not abuse its discretion in accepting the Corrigan report or by failing to give due consideration to all the allowed conditions.

**Basic Law—PTD—Workforce Abandonment**

{¶ 44} Ohio Adm.Code 4121-3-34 provides the commission's rules for the adjudication of PTD applications.

{¶ 45} Thereunder, Ohio Adm.Code 4121-3-34(D) provides guidelines for the adjudication of PTD applications.

{¶ 46} Ohio Adm.Code 4121-3-34(D)(1)(d) currently provides:

> If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.

{¶ 47} Paragraphs two and three of the syllabus of *State ex rel. Baker Material Handling Corp. v. Indus. Comm.,* 69 Ohio St.3d 202 (1994), state:

> An employee who retires prior to becoming permanently and totally disabled is precluded from eligibility for permanent total disability compensation only if the retirement is voluntary and constitutes an abandonment of the entire job market.
>
> An employee who retires subsequent to becoming permanently and totally disabled is not precluded from eligibility for permanent total disability compensation regardless of the nature or extent of the retirement.

{¶ 48} A failure to seek other work or pursue vocational rehabilitation after a commission adjudication that a claimant is capable of sustained remunerative employment can support a finding that, by her own inaction, the claimant has voluntarily abandoned the workforce. *State ex rel. Cook v. Indus. Comm.,* 10th Dist. No.

15AP-1025, 2016-Ohio-8497; *State ex rel. McKee v. Union Metal Corp.,* 10th Dist. No. 15AP-414, 2016-Ohio-1236.

{¶ 49} Relator cites to *State ex rel. Johnson v. Indus. Comm.*, 40 Ohio St.3d 339 (1988), *State ex rel. Roy v. Indus. Comm.*, 74 Ohio St.3d 259 (1996), and *State ex rel. Cupp v. Indus. Comm.*, 58 Ohio St.3d 129 (1991), to support the proposition that the commission must consider all allowed conditions in the industrial claim(s) when it determines an application for PTD compensation.  However, as more fully explained below, the cited cases do not support relator's position that the commission abused its discretion in finding relator voluntarily abandoned the workforce.

**The Cited Cases**

{¶ 50} In *Johnson*, the claimant, George W. Johnson, injured his lower back.  The claim was later amended to include "depression."  Johnson's PTD application prompted the commission to have him physically evaluated by Dr. Colquitt who opined that Johnson was physically capable of sustained remunerative employment, if retrained.  The commission was also prompted to have Johnson examined psychiatrically by Dr. Enrique Huerta, who diagnosed Johnson as severely depressed with a "very poor" prognosis.

{¶ 51} Following a hearing, the commission issued an order finding that Johnson is not permanently and totally disabled.  The order stated that it was based particularly on the report of Dr. Colquitt.

{¶ 52} In *Johnson*, the court observed that Dr. Colquitt only addressed Johnson's physical capabilities.  Moreover, the commission's order failed to include "depression" among the enumerated allowed conditions.  The court stated "we question whether the commission considered all the allowed conditions in refusing to award permanent total disability compensation." *Johnson* at 340.  The *Johnson* court issued a limited writ of mandamus ordering the commission to clarify whether it considered Johnson's psychiatric condition.

{¶ 53} In *Cupp*, the claimant, James W. Cupp, was industrially injured in 1979.  His claim was initially allowed for "left leg, low back, right leg." *Cupp* at 129.  In 1982, the claim was additionally allowed.

{¶ 54} In denying the PTD application, the commission issued an order stating that the claim had been allowed for "left leg, low back, right leg." *Id.* The additional conditions were not listed. In determining that Cupp was not permanently and totally disabled, the commission stated in its order that its decision was based particularly on a report from Dr. McCloud and consideration of Cupp's age, education, work history, and the disability factors. Citing to the *Johnson* case, the court issued a limited writ ordering the commission to clarify whether it considered the additionally allowed conditions.

{¶ 55} In *Roy*, the claimant, William D. Roy, injured his shoulder and lower back.

{¶ 56} In 1989, Roy filed a PTD application. At that time, the industrial claim was only allowed for his shoulder and lower back.

{¶ 57} On June 27, 1990, the commission heard Roy's PTD application but held it in abeyance and referred claimant to the commission's rehabilitation division. On August 7, 1990, Roy moved the commission for additional allowance of a psychiatric condition.

{¶ 58} In early September 1991, the commission issued an order denying PTD compensation. The order states reliance on various medical reports and rehabilitation reports. The order found that Roy is not permanently and totally disabled.

{¶ 59} In late September 1991, Roy sought reconsideration of the commission's order.

{¶ 60} On June 12, 1992, the commission additionally allowed the claim for "major depressive disorder." *Roy* at 261. On April 13, 1993, reconsideration was denied.

{¶ 61} In granting a writ of mandamus, the *Roy* court explained:

> Once the commission allowed the psychiatric condition prior to the commission's conclusive denial of permanent total disability compensation, the issue became one of additional conditions, rather than one of additional evidence. Unlike additional evidence, there is no precedent supporting the denial of permanent total disability compensation absent consideration of all allowed conditions. The commission, therefore, erred in not granting reconsideration and incorporating the condition into its deliberations.

*Id.* at 264.

**Analysis**

{¶ 62} Significantly, relator's cited cases, *i.e., Johnson, Cupp,* and *Roy* all involved commission adjudication of the PTD application on the merits. That is, in each case, the commission determined that the claimant was not permanently and totally disabled and was able to perform sustained remunerative employment.

{¶ 63} Here, the commission's determination that relator voluntarily abandoned the workforce focused on the commission's prior adjudications of the first, second, and third PTD applications filed respectively on January 2, 2003, September 3, 2004, and February 9, 2012. In those three prior adjudications, there is no contention here that the commission failed to consider all the allowed conditions of the claims. And those three prior adjudications premised the determination rendered on the fourth application that relator had failed to seek alternative employment following each of the three adjudications indicating that relator can perform sustained remunerative employment. Given the commission's analysis in determining that relator had voluntarily abandoned the workforce as early as June 2004, it was unnecessary to determine relator's current residual functional capacity. Ohio Adm.Code 4121-3-34(B)(4).

{¶ 64} It is important to observe that the commission's order of June 23, 2016, does not determine relator's current residual functional capacity that would ordinarily occur when a PTD application is decided on the merits. That is, the commission's June 23, 2016 order does not determine the credibility of the medical evidence submitted in support of or in response to the fourth application. Again, given the commission's analysis which focused on the prior commission adjudications of the first, second, and third PTD applications, it was unnecessary to determine relator's current residual functional capacity. Had the commission decided to determine current residual functional capacity, all the allowed conditions of the two industrial claims would need to be considered in keeping with the current law as expressed in *Johnson, Cupp*, and *Roy.*

{¶ 65} Apparently, the commission felt compelled to address the February 2014 report of Amy Corrigan because relator argued that the report was evidence that relator currently wants to re-enter the workforce but is prevented from doing so by the commission's refusal to find her feasible for vocational rehabilitation. It was clearly proper for the commission to address the Corrigan report and the SHO's order of

March 3, 2014 that denied relator's entrance into a vocational rehabilitation plan based on a finding that relator is not a feasible candidate. The SHO's order of March 3, 2014 and the Corrigan report on which the SHO relied are clearly some evidence on which the commission can and did rely to reject relator's assertion that she currently wants to re-enter the workforce.

{¶ 66} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).